J-A09025-15

2015 PA Super 119

TIMOTHY CRISWELL, EXECUTOR OF : IN THE SUPERIOR COURT OF
THE ESTATE OF EARL J. CRISWELL, : PENNSYLVANIA
DEC'D, :
:
Appellant :
:
v. :
:
ATLANTIC RICHFIELD COMPANY AND :
SUNOCO, INC. (R&M), :
:
Appellees : No. 2175 EDA 2014

Appeal from the Order entered May 27, 2014,
Court of Common Pleas, Philadelphia County,
Civil Division at No. 3789 April Term, 2012

BEFORE: BOWES, DONOHUE and STABILE, JJ.

OPINION BY DONOHUE, J.: **FILED MAY 18, 2015**

Timothy Criswell ("Criswell"), as the executor of the estate of Earl J.

Criswell ("Decedent"), appeals from the orders of court granting summary

judgment in favor of appellees Atlantic Richfield Company ("Atlantic") and

Sunoco, Inc. ("Sunoco") (collectively, "Appellees"). Following our review, we

reverse.

This case involves negligence claims brought by Criswell under the

Jones Act, 46 U.S.C.A. § 30104,[1] against multiple defendants, claiming that

---

[1] "It is established that the courts of this Commonwealth have concurrent jurisdiction with federal courts to try actions brought under the Jones Act for injuries sustained, and for maintenance and cure[,] under traditional maritime law." **Richards v. Dravo Corp.**, 375 A.2d 750, 752 (Pa. Super. 1977). Further, the Jones Act provides that the rules of liability established

exposure to asbestos during his time as a member of the Merchant Marine caused him to develop lung cancer. Specifically, Criswell alleges negligence on the part of Appellees because they required Decedent to work with asbestos aboard their vessels when they knew it was hazardous to his health and they did not warn him of this danger. Following the close of discovery, all defendants moved for summary judgment. Relevant to this appeal, Appellees sought summary judgment on the basis that Criswell could not prove exposure to asbestos on their ships. Atlantic's Motion for Summary Judgment, 3/11/14, at 1; Sunoco's Motion for Summary Judgment, 3/11/14, at 1. The trial court granted Atlantic's and Sunoco's motions for summary judgment only. The claims against the remaining defendants were settled prior to trial. Criswell then filed this timely appeal, in which he presents the following two issues for our review:[2]

> 1. Did the [trial] court err by disregarding evidence of [] Decedent's extensive exposure to asbestos insulation while serving as a merchant seaman aboard [Appellees'] tankers?
>
> 2. Did the [trial] court err when it held that [Criswell] had failed to prove [Appellees] "negligent, however slight" under the Jones Act?

Criswell's Brief at 4.

---

under the Federal Employers' Liability Act ("FELA") will apply in a negligence action brought thereunder. *Id.* at 752 n.1.

[2] The trial court did not order Criswell to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

We begin with our standard of review:

> [O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. Our scope of review is plenary. In reviewing a trial court's grant of summary judgment, we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> ***
>
> Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Petrina v. Allied Glove Corp.*, 46 A.3d 795, 797-98 (Pa. Super. 2012) (internal citations omitted).

Rule of Civil Procedure 1035 governs motions for summary judgment and provides, in relevant part, as follows:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. This Court has explained the application of this rule as follows:

> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of a cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense.

*Petrina*, 46 A.3d at 798.

Criswell first argues, essentially, that the trial court failed to view the evidence in the light most favorable to him when it determined that he failed to establish Decedent's exposure to asbestos on Appellees' ships. We agree.

In granting Appellees' motions for summary judgment, the trial court concluded that Criswell had failed to establish exposure to asbestos

"sufficient to cause the disease" by focusing solely on discrete portions of Decedent's testimony.[3] It reasoned as follows:

> [W]hen asked[,] [Decedent] admitted that he has no special training in identifying asbestos by sight. **See** Dep at p 531. [Decedent] was also unable to look at dust and determine whether it contained asbestos. **Id.** Yet, when testifying in connection with exposure from [Atlantic], [Decedent] testified that he believed the steam lines he worked on were covered in asbestos "because it's a very serious thing to have pipes that are not covered with some type of asbestos, especially if it's high pressure or high temperature." **Id.** at 590.
>
> When testifying in connection with [Sunoco], [Decedent] admitted he did not personally handle insulation material. **Id.** at 1132. He admitted he didn't know if the insulation material contained asbestos. **Id.** at 1166. [Decedent] further admitted that he did not see any writing on the old material that were [sic] removed, and that his only basis for believing the replacement components contained asbestos was their high heat application. **Id.** at 1170.
>
> The [sic] type of testimony is precisely the type of testimony that is too speculative to be accepted by this court. In **Samarin v. GAF Corp[.]**, [] 571 A.2d 398 ([Pa. Super.] 1989), alloc. denied, [] 574 A.2d 71 ([Pa.] 1990), the Superior Court held that evidence of a materials high heat application is insufficient to support the conclusion that the product contained asbestos. The Superior Court further held that "without more facts, it is not reasonable for the trial court to infer that the products must have contained asbestos because they were heat resistant." **Id.** at 403[;] **[s]ee also**

---

[3] That the trial court couched its finding in terms of exposure "sufficient to cause the disease" is telling of its additional failure to apply the correct standard regarding causation, which we discuss **infra**.

> ***Bushless v. GAF Corp.***, 585 A.2d 496 (Pa. Super. 1990). Here, Plaintiff is relying on high heat application without further evidence just as in the aforementioned cases. Therefore [s]ummary [j]udgment is proper.

Trial Court Opinion, 9/22/14, at 3.

It is apparent that the trial court found that the only evidence Criswell produced to establish Decedent's exposure to asbestos was Decedent's testimony that he assumed the materials contained asbestos because they could withstand high temperatures, and the trial court concluded that this alone is an insufficient basis upon which to infer that the materials contained asbestos. This is an accurate statement of the law, in the abstract. ***See Samarin***, 571 A.2d at 404 ("[W]ithout more facts, it is not reasonable for the trial court to infer that these products **must** have contained asbestos because they were heat resistant.") (emphasis in the original). In this case, however, Criswell presented other evidence regarding Decedent's exposure to asbestos.

Decedent testified that he worked on Atlantic vessels for approximately five years; first as an oiler for about six months and then as a pump man. Response to Atlantic's Motion for Summary Judgment, 3/27/14, Exhibit F at 72-73. As the pump man, Decedent was responsible for maintaining "all the main cargo pumps, all the valves in the tanks, steam smothering system, $CO_2$ system." ***Id.*** at 74. In that capacity, he worked with insulation that went around the steam lines and valves. ***Id.*** at 75. To

perform repairs on the insulation, Decedent had to cut molded insulation and mix a mortar to fill in holes. *Id.* at 79-80. Decedent used a bag of loose material labeled "asbestos" to make this mortar. *Id.* at 80, 718-19. Decedent testified that when using the loose asbestos, "you tried to be careful, stay out of the wind. … The wind blowing up, you would try to be careful. … [I]t was annoying to get on you. It was sticky and itchy … ." *Id.* Decedent also stated that vibrations would cause dust from deteriorating insulation to fall off and that "seven days a week, twenty four hours a day it was in the air." *Id.* at 586-89. These materials were kept in a designated asbestos locker, which served in part to prevent the loose asbestos from blowing around. *Id.* at 723-24. Inexplicably, the trial court ignored this clear evidence of exposure to asbestos. Viewing it in the light most favorable to Criswell, and resolving all doubts as to the existence of a genuine issue of material fact against Atlantic, we conclude that this is evidence of Decedent's exposure to asbestos on Atlantic's ships.

Decedent also testified that he worked on Sunoco vessels following his discharge from the Navy in 1946 until 1953. Response to Sunoco's Motion for Summary Judgment, 3/27/14, Exhibit D at 59; Exhibit F. Decedent testified that he would mix loose asbestos into a mortar to repair insulation of the steam lines on Sunoco ships. *Id.*, Exhibit D at 69-70.[4] He testified

---

[4] The trial court overlooked this testimony when it concluded that with regard to Sunoco, "[Decedent] admitted he did not personally handle

- 7 -

that he worked with pre-fabricated asbestos insulation that was molded into half-moon shapes, which he then placed on steam lines, bound with wire, coated and painted. This process created dust from the insulation, which he inhaled. *Id.* at 67-68. Decedent also testified that he would remove cracked and broken insulation and replace it with molded asbestos, which he would cut to the appropriate size. *Id.* at 826-28, 834-35. According to Decedent, the engine rooms were insulated with asbestos, and vibrations through the ship caused dust from the insulation to fall. *Id.* at 66. When he worked as a wiper on Sunoco vessels, he swept up the insulation that had been removed. *Id.* at 1164-65.

Unlike on the Atlantic ships, Decedent did not testify that he worked with any item labeled "asbestos" on a Sunoco vessel. Nevertheless, he did testify that Sunoco ships had turbines manufactured by General Electric and that he worked with insulation for these turbines. *Id.* at 738-44. Decedent also produced documents from General Electric, dated November 1958, titled "General Specifications for Heat Retention Materials" and specifically indicated for its steam turbines. Response to Sunoco's Motion for Summary Judgment, 3/27/14, Exhibit I. These documents state that asbestos was a

_____

insulation material. Trial Court Opinion, 9/22/14, at 3. The testimony the trial court cited in support of this conclusion actually indicates that Decedent did not install this material during the short period he held the position of wiper. N.T., 6/5/12, at 1132. Decedent testified that he was promoted from the position of wiper after approximately his first year or two with Sunoco. *Id.* at 1167-68.

component of the insulation materials referred to as "plastic insulating cement" and "pre-formed sectional pipe insulation" and also, obviously, a material referred to as "sprayed asbestos." *Id.* Decedent testified that fixing or replacing the insulation materials that covered the turbines released particles therefrom into the air. Response to Sunoco's Motion for Summary Judgment, 3/27/14, Exhibit D at 744. This evidence, when considered in the light most favorable to Criswell, is evidence of Criswell's exposure to asbestos on Sunoco vessels.[5]

In his second issue, Criswell argues that the trial court applied the wrong standard for negligence when concluding that he failed to put forth evidence to establish causation. We agree. The trial court began from the premise that "[i]n order to establish causation in an asbestos claim under the Jones Act, a plaintiff must show that … the product was a substantial

---

[5] Sunoco argues that Decedent's basis for belief that he was exposed to asbestos aboard its ships was that the material he worked with could withstand high temperatures and that this is insufficient to overcome its summary judgment motion. Sunoco's Brief at 17. There is no merit to this claim, as we have just established that Criswell produced other evidence of Decedent's exposure to asbestos on its ships. Sunoco also argues that Decedent believed that he worked with asbestos because the ships' engineers told him it was asbestos. Sunoco argues that this evidence is hearsay and therefore incompetent to overcome its motion for summary judgment. *Id.* at 19. The trial court did not address this evidentiary issue, and we need not consider it now. As our discussion indicates, the record contains additional evidence to support a finding of exposure to asbestos, and so we do not need to consider the competency of this particular testimony. That is to say, even if Sunoco's argument is correct, there is other competent evidence that establishes exposure to asbestos on its vessels.

factor in causing the injury he suffered." Trial Court Opinion, 9/22/14, at 2 (citing *Lindstrom v. A-C Product Liab. Trust*, 424 F.3d 488 (6th Cir. 2005)).[6] This is incorrect. To prove causation under the Jones Act, a plaintiff need only prove "whether the employer's negligence played any part, however slight, in causing the injury." *Richards*, 375 A.2d at 752 n.2; *see also CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2636 (U.S. 2011) ("Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.").[7] As recounted above, Criswell established exposure to asbestos on Appellees' vessels. Criswell has also produced an expert report by Arthur Frank, M.D., Ph.D., in which Dr. Frank opined that Decedent developed

> asbestos-related pleural disease, called by some pleural asbestosis, based upon the prior history of exposures [to asbestos] as well as the radiographic findings. Secondly, and more importantly, he developed and then died from lung carcinoma that was caused by his exposures in combination with his habit of cigarette smoking. The cumulative exposures he had to asbestos, from any and all

---

[6] As noted by Criswell, *Lindstrom* is a products liability case and does not involve a claim brought under the Jones Act.

[7] More specifically, this relaxed standard of causation means that under the Jones Act, a plaintiff does not have to prove that the defendant's negligence was the proximate cause of its injury. The Jones Act plaintiff need only establish that negligence of the employer played any part at all in bringing about the injury. *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2638 (U.S. 2011).

- 10 -

> products, containing and [sic] any fiber type, would
> have given rise to these two conditions.

Response to Atlantic's Motion for Summary Judgment, 3/27/14, Exhibit O at 2; Response to Sunoco's Motion for Summary Judgment, 3/27/14, Exhibit M at 2. This evidence is sufficient to meet the relaxed causation standard employed under the Jones Act; that is, it is sufficient to "justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." **_CSX Transp.,_** 131 S. Ct. at 2636.

In sum, the trial court failed to view the evidence in the light most favorable to Criswell and applied the wrong standard for causation for a negligence claim under the Jones Act. In both respects, it misapplied the law. Our review of the record reveals that Appellees' summary judgment motions should have been denied, and so we reverse the trial court's determination.

Orders reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2015