J-A22015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ADRIAN JADIC AND RUXANDRA JADIC, M.D., H/W, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| BERTOLET CONSTRUCTION CORPORATION, | : | |
| | : | |
| Appellee | : | No. 266 MDA 2015 |

Appeal from the Order Entered January 22, 2015
In the Court of Common Pleas of Berks County
Civil Division at No(s): 2011-28629

BEFORE:  BOWES, JENKINS, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 16, 2015**

Adrian Jadic and Dr. Ruxandra Jadic appeal from the January 22, 2015 order granting summary judgment to Appellee Bertolet Construction Corporation ("Bertolet") based upon the fact that it was released in connection with this lawsuit.  We affirm.

The pertinent facts follow.  In 2009, the Jadics purchased a home on 48 Cardinal Road, Wyomissing, Pennsylvania, that was built in 1961.  In 2011, they decided to expand and renovate the residence by replacing the home's carport with a garage, enlarging the kitchen, and improving the front porch, which had water problems.  Deposition of Adrian Jadic, 10/24/13, at

_____
* Retired Senior Judge assigned to the Superior Court.

32. Mr. Jadic also wanted his backyard, which had steep slopes, leveled so that his daughter could play there. *Id*. at 123. Leveling the yard required the construction of a retaining wall. The Jadics hired Designworks Architects, P.C. ("Designworks"), and it drew up the architectural plans, which included the designs for the kitchen, the front porch, and the garage, and a proposed retaining wall in the backyard. Plaintiffs' Response In Opposition To Defendant's Motion For Summary Judgment Based On Release, 12/3/14, at ¶ 3 (the drawings produced by Designworks "included a sketched 'proposed retaining wall'").

Designworks also suggested various contractors to perform the work and offered to help Mr. Jadic in the bidding process. *Id*. at 43. In order to save money, Mr. Jadic, an engineer, decided to operate as general contractor. In May 2011, Mr. Jadic hired Bertolet, which was one of the subcontractors recommended by Designworks, to demolish the carport floor, build the new garage's foundation, and pour the concrete floor for the garage. The scope of Bertolet's work was later expanded to include refurbishing the porch's front steps, leveling the backyard, and construction of a retaining wall.

The Jadics brought this suit claiming that the retaining wall was defectively constructed, the concrete floor of the garage was cracking, and the front porch was not properly renovated. Bertolet, which was fired while still grading the backyard, counterclaimed for $7,843.26 in unpaid services.

During discovery proceedings, Bertolet learned that Designworks had sued the Jadics for $14,674 in unpaid services and that, on December 26, 2012, the Jadics and Designworks entered a settlement agreement.

Bertolet moved for summary judgment herein, claiming that it was released in the accord reached by the Jadics and Designworks. The settlement agreement in question was entered into among Designworks, Adrian Jadic, and Ruxandra Jadic, the latter of whom were designated as having a mailing address of 48 Cardinal Road, Wyomissing, PA 19610. The whereas clause included the following language, "Designworks was engaged by Adrian Jadic and Ruxandra Jadic (the "Jadics") to provide architectural services in connection with renovations to and an addition for their residence located at the address stated in the first paragraph above (hereinafter the "Project")." Defendant Bertolet Construction Corporation's Motion For Summary Judgment Based On Release, 11/6/14, at Exhibit G. A dispute arose among Designworks and the Jadics "related to the architectural services provided for the Project[.]" *Id*. Designworks brought its action against the Jadics to recover an outstanding balance of $14,674.00 for "architectural services provided for the Project." *Id*. The Jadics counterclaimed, and the parties decided to settle the matter by the payment of $8,000 by the Jadics. The agreement includes a general release of all entities involved in the Project, to wit:

> **Adrian Jadic and Ruxandra Jadic**, and their successors, agents and assigns, **do hereby remise, release and forever discharge** Designworks **and any other person, partnership, firm, corporation or other entity charged or chargeable with responsibility or liability** and their affiliates, assigns, agents, successors, officers, directors, employees, heirs, executors, attorneys, and administrators of and from all manner of liability, actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, costs, attorneys' fees, interest, expenses, claims and damages or any other kind of damage or things whatsoever, in contract or in tort, law or equity, or pursuant to any statute, **known or unknown**, past, present and future **related to the Project** and/or which were made or could have been made in the Litigation.

*Id*. at Exhibit G (emphases added).

The trial court agreed that this language released Bertolet from liability in connection with the work it performed, which was related to the renovations and improvements to the Jadics' property designed by Designworks. The trial court granted Bertolet's motion for summary judgment. This appeal followed. Bertolet later discontinued its counterclaim, rendering the summary judgment order final. The Jadics present these questions:

> I. Should the Court reverse the Order and Opinion of the Trial Court, dated January 23, 2015, granting summary judgment in favor of Appellee, because the Court erred as a matter of law and/or abused its discretion by applying an overly broad definition of "Project" as used in the settlement agreement ("Settlement Agreement") between the Jadics and their architects, Designworks Architects, P.C. ("Designworks")?

> II. Should the Court reverse the Order and Opinion of the Trial Court, dated January 23, 2015, granting summary judgment in favor of Appellee, because the Court erred as a matter of law

- 4 -

and/or abused its discretion by finding that the Settlement Agreement was not ambiguous and by consequently failing to consider parol evidence?

Appellants' brief at 5.

Initially we note, "Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. Our scope of review is plenary." *Criswell v. Atlantic Richfield Co.*, 115 A.3d 906, 908 (Pa.Super. 2015) (citation omitted). In the summary judgment setting, we view the record in the light most favorable to the party who did not move for summary judgment. *Id*. "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered." *Id*. at 909. Any doubt as to the existence of a genuine issue of material fact is resolved in favor of the non-moving party. *Id*.

The matter herein involves the interpretation of a contract, which is a question of law. *Neducsin v. Caplan*, 121 A.3d 498 (Pa.Super. 2015); *Clarke v. MMG Insurance Co.*, 100 A.3d 271 (Pa.Super. 2014). It cannot be contested that "a party is bound by clear and unambiguous language contained in a contract." *Patriot Commercial Leasing Co. v. Kremer Restaurant Enterprises LLC*, 915 A.2d 647, 651 (Pa.Super. 2006). Thus, if "a writing is clear and unequivocal, its meaning must be determined by its contents alone." *WMI Grp., Inc. v. Fox*, 109 A.3d 740, 749 (Pa.Super.

2015). It is only when the contractual language is unclear or ambiguous that a party is permitted to introduce parol evidence to ascertain the parties' intent. A contract will be considered ambiguous when "it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id*. If there is no "ambiguity, the plain meaning of the agreement will be enforced." *Id*.

The trial court's decision herein is supported by a significant body of law governing releases. When a person executes a general release encompassing anyone with liability in connection with a matter, the release is held to apply to parties not named in the agreement, even if they did not contribute to the consideration paid for the settlement and were not intended to be covered by the release.

An early iteration, albeit not the first one, of this precept is found in *In re Bodnar's Estate*, 372 A.2d 746 (Pa. 1977). Therein, our Supreme Court held that the terms of a general release prevented a bank from enforcing a claim against an estate. The decedent had executed a bond and mortgage pursuant to a construction loan agreement with a bank. The decedent hired a construction company to build the structure secured by the mortgage. After inspecting progress on the project, the bank would distribute periodic payments to the builder under the construction loan. After the decedent died, the bank was owed money under the loan agreement, and it sued the builder claiming that the construction company had been paid more than the

value of its services and the amount that it was entitled to receive under the construction loan disbursement schedule.

The matter between the builder and the bank was settled by the execution of an agreement whereby the bank released the builder and "any and all other person, firm, partnership and corporation, which are or might be claimed to be liable to" the bank as well as "their heirs, administrators, executors, successors and assigns from any and all actions, causes of action, claims and demands of whatsoever kind or nature on account . . . as a result of a construction loan agreement[.]" *Id*. at 748.

Our Supreme Court concluded that the bank had released the decedent from his loan obligation by this language and that the bank could not make a claim against the decedent's estate. It ruled that the "effect of the release executed by [the bank] must be determined from its language, given its ordinary meaning unless a different meaning was clearly intended." *Id*. Since the release in question was a general one, encompassing any person who might be liable to the bank under the construction loan agreement, our High Court held that the decedent was covered by its terms.

The Court applied a principle previously announced and now firmly ensconced in this Commonwealth: "There is no requirement that a release specifically name all of the parties to be released if the terms of the release clearly extend to them." *Id*. The *Bodnar* Court further reinforced that a person does not have to provide consideration for the release in order to

take advantage of its terms.  *Id*.  Finally, it applied precedent providing that, if the release language is clear, it does not matter whether an entity or person not named in the release was not intended to be covered by the document in question.  *Id*.  Rather, the clear and unambiguous terms of a release will be given effect.  If the release applies generally to any person or entity that had liability in connection to a matter, the release will operate to discharge that person or entity from liability.

Our Supreme Court more recently applied this concept in ***Buttermore v. Aliquippa Hospital***, 561 A.2d 733 (Pa. 1989).  Therein, Buttermore was involved in an automobile accident with another car, which was driven by Frances Moser.  Buttermore suffered injuries in the incident and was treated at Aliquippa Hospital ("Aliquippa").  Buttermore sued Moser, and, in a separate lawsuit, Aliquippa, averring that Aliquippa aggravated his injuries due to its negligence.  Buttermore settled with Moser and released him, as well as any other person or entity, "whether known or unknown" from any "claims, demands, damages, actions, third party actions, causes of action, or suits at law" due to "any matter or thing done, omitted or suffered to be done, on account of or arising from damage to property, bodily injury or death resulting or to result from" the accident in question.  *Id*. at 734.

Our Supreme Court held that the release discharged Aliquippa from liability, even though it had neither contributed consideration toward the release nor was specifically named therein.  This conclusion was a result of

the fact that, "by its terms [the release] discharges all claims and parties" involved in damages occasioned by the car accident. *Id*. The **Buttermore** Court rejected Buttermore's position that it "was not his intent, by signing the release in question, to release" Aliquippa. *Id*. The Court continued that "the effect of a release must be determined from the ordinary meaning of its language" and that a general release absolving any person or entity from liability in a matter applies to all tortfeasors that could have liability, even though those persons and entities are not specifically named in the release. *Id*.

We applied this legal authority in **Ford Motor Co. v. Buseman**, 954 A.2d 580 (Pa.Super. 2008). Therein, a passenger in a car was killed when the car rolled over. The representative of the passenger's estate sued, in separate lawsuits, the driver of the car and the manufacturer of that vehicle. The plaintiff then settled with the driver and executed a general release. We held that the release absolved the manufacturer from liability, even though the manufacturer was not named therein and did not provide consideration for the document. This Court's ruling was based upon the fact that the release language covered all persons and entities from any claims or actions involving the accident in question. We observed that the "the effect of a release is determined by the ordinary meaning of the language" and that a "release, extending to 'any and all persons' [is] intended to release an individual not named in the release and who paid no consideration for the

release." *Id*. at 586. We upheld application of the release to the car manufacturer despite the plaintiff's protestations that the manufacturer was not intended to be released in the document. *Accord Holmes v. Lankenau Hospital*, 627 A.2d 763 (Pa.Super. 1993).

The trial court in the present case correctly applied this authority. The Jadics released any and all entities from liability in connection with the construction project on their home. Bertolet was an entity involved in the construction project; it was recommended by Designworks to perform work on the plans that Designworks created, and Bertolet was hired by the Jadics to perform work that actually was designed by Designworks. Bertolet was clearly and unequivocally covered by the language in the general release negotiated among the Jadics and Designworks.

The Jadics' first challenge to the trial court's ruling is that the court's interpretation of the term "Project," as defined in the settlement agreement, was overbroad and that term only meant the architectural services provided by Designworks. This assertion conflicts with the clear and unambiguous language of the settlement agreement. The project was defined to include the renovations and improvements to the Jadics' home. The release stated that Designworks was released in connection with architectural services provided for the project. It would have been unnecessary to add that Designworks was released for architectural services rendered for the project if the project included only the architectural services.

The Jadics' next claim is that Bertolet was not hired for services to be performed in connection with the project. However, the Jadics admit that Designworks' plans included demolition of the carport and the design for their new garage. Mr. Jadic engaged Bertolet to remove the carport, build the foundation for the garage, and pour the cement for the garage floor. Additionally, Bertolet was hired to pour the cement steps for the new porch, which also was designed by Designworks. The Jadics' attempt to take Bertolet outside the scope of the project by noting that Bertolet also constructed a retaining wall that was not in Designworks' architectural plans. Appellants' brief at 12. This attempt is unavailing.

First, the Jadics admitted in their response to the motion for summary judgment that a proposed retaining wall was part of the architectural plans submitted to the Jadics by Designworks, even though the retaining wall eventually built by Bertolet differed from the one proposed by Designworks. Additionally, Mr. Jadic acknowledged at his deposition that he planned to have the backyard leveled while his garage, porch, and kitchen were being constructed or renovated. Thus, the work in the yard, which required the addition of a retaining wall, was part of renovations being performed on the Jadics' property.

The Jadics also propose that Bertolet was not covered by the release since that document pertained only to the litigation between them and Designworks and Bertolet was not a party to that lawsuit. However, the

- 11 -

release encompassed claims that either were brought or could have been brought in the lawsuit. Specifically, the Jadics released and discharged Designworks and any other firm or entity from "all manner of liability, actions and causes of action, suits" that were "related to the Project and/or which were made **or could have been made** in the Litigation." Defendant Bertolet Construction Corporation's Motion For Summary Judgment Based On Release, 11/6/14, at Exhibit G (emphasis added). Bertolet was recommended by Designworks and was one of the subcontractors hired by the Jadics to perform project work. It could have been made a party to the litigation. Additionally, the release covered both "known and unknown" claims; thus, contrary to the Jadics' averment on appeal, the fact that the Jadics had an existing action against Bertolet does not remove Bertolet from the ambit of the release.

The Jadics' final position is that the agreement was ambiguous and that the trial court should have considered parol evidence establishing "that the Jadics and Designworks did not intend the Settlement Agreement to extend to the Jadics' existing claims" against Bertolet. Appellants' brief at 15. This very position has been repeatedly rejected in the above-analyzed case authority. The Jadics' intent is memorialized by the clear and unambiguous contract language releasing from any claims or actions any entity or corporation involved in the project. This language encompasses Bertolet; there is no ambiguity. Hence, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/16/2015