J-A15014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| VALLEY NATIONAL BANK, SUCCESSOR-IN-THE INTEREST TO THE PARK AVENUE BANK, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| H. JACK MILLER, ARI MILLER AND URI SHOHAM, | |
| Appellants | No. 3102 EDA 2014 |

Appeal from the Judgment Entered October 14, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): August Term, 2012 No. 01396

BEFORE:  BOWES, MUNDY, AND FITZGERALD* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 19, 2015**

H. Jack Miller, Ari Miller, and Uri Shoham appeal from the October 14, 2014 order assessing damages and entering judgment against them in the amount of $563,906.99.  We affirm.

Valley National Bank ("Appellee"), as successor-in-interest to The Park Avenue Bank ("Park"), instituted this action in confession of judgment against Appellants as sureties for a loan given to Gelt Business Credit LLC, predecessor-in-interest to Gelt Financial Corporation ("Gelt").  A confessed judgment was entered in the amount of $397,683.87 plus interest at $212.75 per diem.  Thereafter, the parties stipulated to opening the judgment and to proceeding before the trial court as though the complaint in

_____
* Former Justice specially assigned to the Superior Court.

confession of judgment were a civil complaint. Appellants filed an answer and a counterclaim. Appellee replied to the counterclaim and filed a motion for summary judgment as to Appellants' liability as sureties for Gelt's unpaid debt. On September 17, 2014, the trial court entered summary judgment based upon the documents executed by Appellants. After the amount of damages was assessed and judgment was entered on the damages award, Appellants filed the present appeal.[1]

They raise the following allegations:

1. Whether the Trial Court erroneously entered summary judgment in favor of the Bank and against the Sureties when, in lieu of deciding whether genuine issues of material fact exist, the Trial Court determined the merits, persuasiveness, and/or convincing nature of each of the Sureties counterclaims.

2. Whether the Trial Court violated the **Nanty-Glo** rule by relying upon witness testimonials, such as affidavits, when entering the Order Setting Judgment Amount.

3. Whether the Trial Court erred by failing to find that genuine issues of material fact exist with regard to Sureties' claim against the Bank for fraudulent inducement.

4. Whether the Trial Court erred by failing to find that genuine issues of material fact exist with regard to Sureties' claim against the Bank for negligence.

---

[1] Appellants' challenges relate to the September 17, 2014 order finding that they were liable as sureties for the outstanding debt owed by Gelt. We have jurisdiction to consider the propriety of that interlocutory order since Appellants have filed this appeal from the final order assessing the amount of damages and entering judgment against them. **K.H. v. J.R.**, 826 A.2d 863 (Pa. 2003) (appeal from final order draws all prior interlocutory orders into question).

5. Whether the Trial Court erred by failing to find that genuine issues of material fact exist with regard to Sureties' claim against the Bank for promissory estoppel.

6. Whether the Trial Court erred by failing to find that genuine issues of material fact exist with regard to Sureties claim against the Bank for breach of contract.

7. Whether the Trial Court erred by finding that no genuine issues of material fact exist with regard to the amounts owed.

Appellants' brief at 5-7.

We note that, while Appellants purport to raise seven issues in their statement of issues involved, there are only four arguments advanced in their brief, which we will address in the order raised. Before analyzing the arguments in question, we first set forth a summary of the pertinent facts.

This action arises from a transaction that occurred on August 3, 2005, when Gelt executed a promissory note and loan agreement to document a million dollar loan from Park to Gelt. Each Appellant executed the loan agreement individually as a surety with Mr. Shoham executing it on behalf of Gelt. Complaint in Confession of Judgment, 8/15/12, at Exhibit B. The money was loaned to Gelt so that it could, in turn, provide mortgage loans to homebuyers. Park's collateral included the mortgages that Gelt obtained with the loan proceeds. Gelt was not to loan to its customers in excess of ninety percent of the amount outstanding on the loan between Park and Gelt.

Park also demanded personal guarantees from each Appellant before it would loan the money to Gelt. Appellants were principals and/or officers of

Gelt and thus personally benefited from Gelt's financial viability. They were also experienced businessmen, having secured numerous loans from at least fifteen banks during the course of their careers.

On August 3, 2005, Appellants executed a surety agreement agreeing "to be and become unconditional surety(s)" for the loan made to Gelt. *Id*. at Exhibit C ¶ 1. The surety obligation assumed by each Appellant was "absolute and unconditional" and could not be "reduced, diminished or released" in any manner due to Park's failure "to obtain, retain, preserve, prefect or enforce any rights against any person or entity . . . or in any property securing any or all of the Borrower's indebtedness." *Id*. at § 3 (a).

In March 2010, the New York State Banking Department closed Park and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. Thereafter, the FDIC and Appellee entered an agreement whereby Appellee purchased Park's assets and assumed a portion of its obligations. Appellee thereby became successor-in-interest to Park. On July 25, 2011, Gelt filed for Chapter 11 bankruptcy. The loan that Park had made to Gelt matured on August 12, 2011. Appellee thereafter demanded payment from Appellants. After Appellants refused to pay the outstanding amount Gelt owed to Appellee, this lawsuit ensued.

We now outline the applicable principles regarding our review on appeal. "Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or

committed an error of law.  Our scope of review is plenary." ***Criswell v. Atlantic Richfield Co.***, 115 A.3d 906, 908 (Pa.Super. 2015) (citation omitted).  In the summary judgment setting, we view the record in the light most favorable to the party who did not move for summary judgment.  ***Id***. "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered." ***Id***. at 909.  Any doubt as to the existence of a genuine issue of material fact is resolved in favor of the non-moving party. ***Id***.

The matter herein involves the interpretation of loan and surety agreements negotiated among Park, Gelt, and Appellants.  We observe that the interpretation of a contract is a question of law. ***Neducsin v. Caplan***, 121 A.3d 498 (Pa.Super. 2015); ***Clarke v. MMG Insurance Co.***, 100 A.3d 271 (Pa.Super. 2014).  "It is settled law that a party is bound by clear and unambiguous language contained in a contract." ***Patriot Commercial Leasing Co. v. Kremer Restaurant Enterprises LLC***, 915 A.2d 647, 651 (Pa.Super. 2006).  Additionally, if a contract is clear and unambiguous, its meaning is determined from the writing itself. ***Neducsin***, ***supra***.

Based upon the clear and unambiguous language in the surety agreement whereby Appellants agreed to unconditionally guarantee the loan made to Gelt, the trial court granted Appellee summary judgment. Appellants' first challenge to the decision is a generalized assertion that the

grant of summary judgment and ensuing order assessing damages "should be reversed because the court prematurely weighed disputed evidence and improperly decided the case on the merits" in light of pending factual disputes. Appellants' brief at 11. Appellants assert that they had valid defenses to the action against them, including that they were fraudulently induced into entering the agreements, that Appellee was estopped from enforcing the documents in question, and that Park breached its contract. Appellants' brief at 11.

Appellants' claims of fraudulent inducement, estoppel, and negligence are all based upon Parks' failure to collect on its collateral consisting of the mortgages on the loans made by Gelt. Appellants maintain that if Park had perfected its security interest in Gelt's mortgages, "90% - 100% of its claim against the Sureties could have been offset by the value of the collateral." Appellant's brief at 5. Appellants continue that "by failing to perfect its security interests, and failing to petition [Gelt's] Bankruptcy Court to be treated as a secured creditor, [Park] abandoned the property collateralized under the Agreement and then turned around and requested reimbursement for its negligence from the Sureties." *Id.* They suggest that: 1) they were fraudulently induced to enter the loan based upon the belief that Park would collect on its collateral before proceeding against them; 2) that Park breached the agreements by not foreclosing on the collateralized mortgage; and 3) Park was estopped from proceeding against them as sureties since it

did not collect the debt owed under the mortgages that were collateral for the Gelt loan.

However, under the clear and unequivocal language of the surety agreement executed by Appellants, Park's failure to collect on its collateral had no effect on Appellants' liability as sureties. The agreement in question states:

3. **The Undersigned's liability hereunder is absolute and unconditional and shall not be reduced, diminished or released in any way by reason of**:

(a) **Any failure by Bank to** obtain, retain, preserve, perfect or **enforce any rights** against any person or entity (including, without limitation, any obligor) or **in any property securing any or all of the Borrower's Indebtedness**[.]"

Complaint in Confession of Judgment, 8/15/12, at Exhibit C § 3 (emphases added). Simply put, Appellants cannot invoke the stated defense under the contract in question. Indeed, the defense was also waived under another provision wherein Appellants waived any defenses to this surety action: "The Undersigned hereby waive(s) . . . [a]ll defenses whatsoever to the Undersigned's liability hereunder[.]" *Id*. at § 8(a). Hence, we reject any claim that summary judgment was precluded based upon the Park's failure to collect on the mortgages used as collateral for the loan from Park to Gelt.

Appellants' second assertion is that the order granting summary judgment as to liability and entering the monetary judgment "should be reversed because the court relied upon a void contract clause." Appellant's

brief at 13. Specifically, their position is that the portions of the surety agreement relied upon by Appellee are unenforceable as against public policy. Appellants portray the clauses in question as exculpatory provisions shifting liability for Park's negligence to them. We cannot agree with Appellants' characterization of the clauses in question. They simply prevent Appellants from raising certain defenses to the clear and unambiguous surety obligation that they assumed in a contract, including the defense that Park did not enforce its right to the collateral for the Gelt loan.

Gelt, not Park, made the loans to the homeowners and could have ensured that the mortgagors could satisfy their debt or, alternatively, that the real estate secured by the mortgages was equal in value to the amount of the mortgage loans. Additionally, Gelt could have collected on the mortgages itself. The clauses failed to shift "liability for negligence away from the very party who was negligent." *Id*. Gelt was more negligent than Park. Hence, the clauses do not violate the public policy relied upon by Appellants.

Appellant's third position is that the grant of summary judgment should be reversed because the "court relied upon the Bank's affidavit" in violation of the rule announced in *Borough of Nanty-Glo v. American Surety Co. of New York*, 163 A. 523 (Pa. 1932) and reaffirmed by *Penn Center House Inc. v. Hoffman*, 553 A.2d 900 (Pa. 1989). Appellants' brief at 16. The well-ensconced *Nanty-Glo* rule provides that summary

judgment may not be granted "when the moving party relies exclusively on oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact[.]" *Lineberger v. Wyeth*, 894 A.2d 141, 149 (Pa.Super. 2006) (citation omitted); *see also JP Morgan Chase Bank, N.A. v. Murray*, 63 A3d 1258 (Pa.Super. 2013). The *Nanty-Glo* pronouncement, however, does not apply when the party against whom summary judgment was entered has made admissions establishing that the moving party is entitled to such judgment.

Herein, in their depositions, Appellants expressly admitted that Park made the loan to Gelt, that Gelt signed the loan agreement, and that Gelt signed the note evidencing the loan. They acknowledged both that the loan to Gelt matured and the principal balance was due on the loan. Finally, Appellants conceded that they executed the surety agreement. The language of the surety agreement is clear and unambiguous. Summary judgment herein was firmly premised upon the admissions of Appellants and the unambiguous language of the document that they executed. Thus, *Nanty-Glo* was not violated.

Appellants' final position is somewhat redundant. They argue that summary judgment "should be reversed because genuine issues of material fact exist, which preclude the entry of judgment as a matter of law." Appellant's brief at 17. They again rely upon the loan agreement's provision that the outstanding loan balance between Gelt and Park could not exceed

- 9 -

ninety percent of the balance of the collateral mortgage loans. They posit that this fact caused them to believe that they would not be liable for more than ten percent of Gelt's outstanding loan balance, at any time. However, Appellants' obligation, as sureties, was not diminished, under the surety agreement, due to Park's failure to collect on the collateral. Any belief that they had about their surety obligation that violated the clear terms of the surety agreement was incorrect and cannot create a genuine issue of material fact.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2015