J. A21031/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JACK McDAVID AND | : | IN THE SUPERIOR COURT OF |
| 2100 FAIRMOUNT AVENUE, LLC, | : | PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 46 EDA 2019 |
| | : | |
| J. CONOR CORCORAN, ESQUIRE | : | |

Appeal from the Order Entered November 26, 2018,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. 170303206

BEFORE:  BOWES, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 23, 2020**

Jack McDavid ("Mr. McDavid") and 2100 Fairmount Avenue, LLC ("Fairmount LLC") (collectively, "appellants"), appeal from the November 26, 2018 order entered by the Court of Common Pleas of Philadelphia County granting J. Conor Corcoran, Esquire's ("Mr. Corcoran") motion for summary judgment and dismissing appellants' amended complaint sounding in wrongful use of civil proceedings with prejudice.  After careful review, we affirm.

The trial court set forth the following factual and procedural history:

> Fairmount LLC was formed on February 21, 2008 for the purpose of owning and operating a building at 2100 Fairmount Avenue, Philadelphia, Pennsylvania (the "property").  At the time of formation, Fairmount LLC was comprised of the following members: [Mr.] McDavid, Douglas Ross, Colin Mick Houston, Jill Fink, and Angela Vendetti.  Pursuant to an operating agreement executed shortly after

formation, [Mr.] McDavid was tasked with the management of Fairmount LLC. Ms. Vendetti and Ms. Fink jointly owned Anjilla, Inc., as business partners, through which they operated a coffee shop in the property's first floor as Mugshots Coffeehouse and Juicebar ("Mugshots").

In 2003, Mugshots opened at the property, which Fairmount LLC purchased five years later. Pursuant to a verbal agreement, Mugshots leased the commercial space from Fairmount LLC for $6,200 per month. A written lease agreement followed in 2010 between Fairmount LLC and Ms. Vendetti, Ms. Fink, and Anjilla, Inc[.], and was signed on July 23, 2010. Ms. Vendetti never received a fully executed copy of the lease agreement at the time of signing. One year later, Ms. Vendetti requested a copy from Mr. McDavid and was provided a new lease with an increased monthly rent of $7,500 per month, prompting her to move Mugshots out of the property's commercial space.

1. **The Underlying Case**

In a letter sent to Mr. McDavid on August 15, 2013, Ms. Vendetti requested information relating to the business and financial condition of Fairmount LLC, pursuant to Sections 39 and 40 of Fairmount LLC's operating agreement. The underlying case was initiated by Mr. Corcoran on behalf of Ms. Vendetti and against [appellants] on March 30, 2014, in part for Mr. McDavid's refusal to provide the requested information. After several rounds of preliminary objections and amended complaints, Ms. Vendetti asserted the following counts in her fourth amended complaint: (I) accounting, (II) breach of operating agreement, (III) breach of fiduciary duty, and (IV) appointment of receiver, and/or reorganization, and/or equity. On July 9, 2015, [the trial] court granted [appellants'] motion for summary judgment, to which Ms. Vendetti filed a notice of appeal. In a separate unrelated case, Ms. Vendetti also appealed a confession of judgment action against her by

Fairmount LLC to recover outstanding rent owed after Mugshots left the property in April 2012.

Settlement negotiations began while the appeals for both the confession of judgment and the underlying case were pending. Negotiations ultimately concluded on August 14, 2015, when the parties reached a global settlement agreement and mutual release to resolve all disputes between them. Pursuant [to] that agreement, Ms. Vendetti agreed to withdraw both her appeals and relinquish her interest in Fairmount LLC, while Fairmount LLC agreed not to pursue Ms. Vendetti for any outstanding rent owed under the confessed judgment action. The settlement included a provision which permitted both [appellants] the limited right to bring a wrongful use of civil proceedings claim against [Mr.] Corcoran for initiating and pursuing the underlying case.

2. **The Current Case**

[On] March 29, 2017, [appellants] commenced this action against [Mr. Corcoran]. On September 14, 2017, [Mr. Corcoran] filed preliminary objections to [appellants'] complaint, to which [appellants] filed an amended complaint on October 2, 2017. In the amended complaint, [appellants'] sole count against [Mr. Corcoran] was for wrongful civil proceedings, alleging that [Mr. Corcoran] was grossly negligent and/or lacked probable cause to bring the underlying case. [Mr. Corcoran] filed a motion for summary judgment on October 15, 2018.

Trial court opinion, 11/26/18 at 1-3 (extraneous capitalization omitted). The trial court granted Mr. Corcoran's motion for summary judgment and dismissed appellants' amended complaint with prejudice on November 26, 2018. Appellants filed a motion for reconsideration of the trial court's November 26, 2018 order, which the trial court denied on December 7, 2018.

Appellants filed a timely notice of appeal. The trial court did not order appellants to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Pursuant to Pa.R.A.P. 1925(a), the trial court filed an opinion, in which it incorporated the opinion accompanying its November 26, 2018 order granting Mr. Corcoran's motion for summary judgment and dismissing appellants' amended complaint with prejudice.

Appellants raise the following issues for our review:

[I.] Did the [t]rial [c]ourt err in concluding that [appellants] were unable to prove that they prevailed in the Underlying Litigation because of the Landlord/Tenant Settlement (as hereinafter defined), by failing to view the evidence presented in the light most favorable to [appellants] and failing to apply controlling law holding that the question of whether the Underlying Litigation was resolved by and through the Landlord/Tenant Settlement, or, alternatively, whether the withdrawal of the appeal from the Dragonetti Summary Judgment was an unbidden abandonment, are disputed issues of material fact that should be resolved by the jury?

[II.] Where resolution of Landlord/Tenant Judgment (as hereinafter defined) was the crux of the negotiations resulting in the Landlord/Tenant Settlement, not resolution of the Underlying Litigation, should [Mr.] Corcoran still be held accountable for his particularly egregious abuse and misuse of the civil litigation process in furtherance of the Dragonetti Act's purposes of insuring the continuing integrity of the legal profession and judicial system, and punishing attorneys who abuse the system to deter future misconduct, rather than be allowed to escape liability because the litigants in the Landlord/Tenant Judgment resolved their

differences in that action with the express intent that [appellants] be afforded the right to seek to hold [Mr. Corcoran] accountable for his misconduct, and where failing to hold him accountable would simply embolden future misconduct.

[III.] Did the [t]rial [c]ourt err in concluding that [appellants] had failed to present evidence establishing a disputed issue of material fact with respect to whether [Mr.] Corcoran's withdrawal of an appeal in the underlying litigation was an unbidden abandonment of a claim brought in bad faith?

[IV]. In concluding that there were no material facts in dispute and that [Mr.] Corcoran was entitled to summary judgment, did the [t]rial [c]ourt fail to view the record before it in the light most favorable to the non-moving party, including by setting forth factual findings in the factual recitation portion of its Opinion that closely modeled the factual averments of [Mr.] Corcoran's motion but which ignored [appellants'] response and rebutting evidence, and which were, in some instances, contrary to the [t]rial [c]ourt's own findings in granting [appellants] summary judgment in the Underlying Litigation (as hereinafter defined)?

[V.] Did the [t]rial [c]ourt err when, contrary to the law of the case, it elected to grant summary judgment in favor of [Mr.] Corcoran on the issue of whether [appellants] prevailed in the Underlying Litigation based upon the exact same evidence and the exact same legal arguments [Mr.] Corcoran had presented by way of preliminary objections, but which the [trial c]ourt had already rejected in overruling same under essentially the same standard of review?

[VI.] Because Mr. McDavid executed the Landlord/Tenant Settlement only in his official

> capacity as managing member of [Fairmount LLC], but not in his individual capacity—the capacity in which he was sued by [Mr.] Corcoran, did the [trial c]ourt err in concluding that the Landlord/Tenant Settlement also bars his individual claims?

Appellants' brief at 4-6.

Preliminarily, we note that appellants failed to divide the argument section of their brief in compliance with Pa.R.A.P. 2119(a), which requires the argument to be divided into as many parts as there are questions to be argued. We have the authority to dismiss appeals for failing to comply with the Rules of Appellate Procedure, and will do so in cases where such a failure hinders our ability to conduct meaningful appellate review. **Kern v. Kern**, 892 A.2d 1, 5-6 (Pa.Super. 2005) (citation omitted), **appeal denied**, 903 A.2d 1234 (Pa. 2006). Here, because our ability to conduct meaningful appellate review has not been hindered, we shall reach a decision on the merits.

Based on our reading of appellants' brief, the following issues for appellate review can be gleaned from the point headings:

> A. [Whether] the trial court erred in concluding, as a matter of law, that the underlying litigation was resolved by the landlord/tenant settlement[?]
>
> B. [Whether] the trial court's conclusion that [appellants] offered "no evidence" that the withdrawal of the Dragonetti summary judgment was an unbidden abandonment was in error and contrary to the record[?]

C. [Whether] the trial court's decision to grant summary judgment in favor of [Mr.] Corcoran after overruling his preliminary objections which were based upon the exact same evidence and the exact same legal arguments runs afoul of the law of the case doctrine mitigating against the present inconsistent result[?]

D. [Whether] the trial court erred in concluding that the landlord/tenant settlement precluded a finding that Mr. McDavid prevailed in the underlying litigation[?]

Appellants' brief at i-ii (extraneous capitalization omitted).[1]

[O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. Our scope of review is plenary. In reviewing a trial court's grant of summary judgment, we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

* * *

---

[1] For ease of discussion, we shall address issues A and B together.

> Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Petrina v. Allied Glove Corp.*, 46 A.3d 795, 797-798 (Pa.Super. 2012) (internal citations omitted).

Rule of Civil Procedure 1035 governs motions for summary judgment and provides, in relevant part, as follows:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1)   whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2)   if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C[iv].P. 1035.2. This Court has explained the application of this rule as follows:

> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of a cause

of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense.

*Petrina*, 46 A.3d at 798.

*Criswell v. Atl. Richfield Co.*, 115 A.3d 906, 908-909 (Pa.Super. 2015).

## A. & B.

In their first issue, appellants contend that,

the trial court erred when it concluded, as a matter of law, that the underlying litigation was resolved by the landlord/tenant settlement alone, and that Mr. McDavid "is directly and explicitly part of, covered by, and bound by the [landlord/tenant settlement]," thereby precluding a finding of a favorable termination in favor of either of the Dragonetti plaintiffs.

Appellants' brief at 30 (extraneous capitalization omitted).

The Dragonetti Act sets forth the following cause of action:

**(a) Elements of action.--**A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; **and**

(2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351(a) (emphasis added).

Specifically, appellants argue that the trial court improperly relied on this court's decision in **D'Elia v. Folino**, 933 A.2d 117 (Pa.Super. 2007), **appeal denied**, 948 A.2d 804 (Pa. 2008). (Appellants' brief at 31.) In **D'Elia**, this court considered whether a settlement in an underlying medical malpractice lawsuit constituted a termination in favor of the defendant in the underlying lawsuit. **D'Elia**, 933 A.2d at 120-121. The Dragonetti plaintiff in **D'Elia**, Frank L. D'Elia, M.D. ("Dr. D'Elia"), despite being dismissed from the underlying medical malpractice lawsuit via entry of summary judgment, executed a settlement agreement with the plaintiff of the underlying lawsuit, wherein the underlying plaintiff agreed not to appeal the entry of summary judgment in Dr. D'Elia's favor in exchange for Dr. D'Elia's not bringing a wrongful use of civil proceedings cause of action against the underlying

- 10 -

plaintiff. *Id.* at 120, 122. Dr. D'Elia, however, reserved his right to bring a wrongful use of civil proceedings cause of action against the underlying plaintiff's counsel. *Id.* at 120.

In response to Dr. D'Elia's wrongful use of civil proceedings cause of action, the underlying plaintiff's counsel raised preliminary objections in the nature of a demurrer, which the trial court sustained, thereby dismissing Dr. D'Elia's wrongful use of civil proceedings complaint. *Id.* On appeal, this court held as follows:

> Generally, when considering the question of "favorable termination" in a wrongful use of civil proceedings case, whether a withdrawal or abandonment constitutes a favorable, final termination of the case against who[m] the proceedings are brought initially depends on the circumstances under which the proceedings are withdrawn. *See Bannar v. Miller*, 701 A.2d 242, 247 (Pa.Super. 1997). A withdrawal of proceedings stemming from a compromise or agreement does not, as a matter of law, constitute a termination favorable to the party against whom proceedings have been brought originally. *See Rosenfield v. Pennsylvania Auto Ins. Plan*, [] 636 A.2d 1138, 1142 ([Pa.Super.] 1994). Likewise, . . . a wrongful use of civil proceedings suit may be dismissed on the grounds of an insufficiently "favorable termination" even if the attorney-defendant in the wrongful use of civil proceedings suit was not part of the settlement between the parties or even if the language of the settlement itself reserves a party's right to initiate suit based on wrongful use of civil proceedings against a party's attorney. *Electronic Lab. Supply Co. v. Cullen*, 712 A.2d 304, 310-311 (Pa.Super. 1998).
>
> As we held in *Cullen*, where the parties to the underlying suit agree jointly to end the underlying suit in a non-litigious nature, the liability of the underlying

> defendant, *i.e.*, the plaintiff in the wrongful use of civil proceedings suit, is never determined with finality. ***Cullen***, 712 A.2d at 311. Therefore, the underlying suit is not a "favorable termination" within the meaning of 42 Pa.C.S.A. § 8351.

***D'Elia***, 933 A.2d at 122-123.

This court further noted that,

> [i]n [***Bannar***], this Court upheld a plaintiff's Dragonetti Act verdict on the basis that the plaintiff's voluntary dismissal constituted a final determination in favor of the defendants. We did so because the peculiar, troubling evolution of that case, which suggested beyond any credible doubt that the suit in question was brought for an improper purpose, "tend[ed] to establish neither [the plaintiffs] nor [the] attorneys were attempting to properly adjudicate the claim." This Court observed that "[a] last-second dismissal in the face of imminent defeat is not favorable to [Dragonetti plaintiffs. Dragonetti plaintiffs] did not answer the bell in the fight they started, which is a victory for the other side." ***Bannar***, 701 A.2d at 248.

***Majorsky v. Douglas***, 58 A.3d 1250, 1269-1270 (Pa.Super. 2012), ***appeal denied***, 70 A.3d 811 (Pa. 2013), ***cert. denied***, 571 U.S. 1127 (2014).

Pursuant to our holdings in ***Bannar*** and ***D'Elia***, we must look to the circumstances under which the underlying litigation in this case was withdrawn. ***D'Elia***, 933 A.2d at 122, citing ***Bannar***, 701 A.2d at 247. Here, as summarized by the trial court, appellants "contend the praecipe for discontinuance of appeal in the underlying case was tantamount to an unbidden abandonment of a claim brought in bad faith[.]" (Trial court opinion, 11/26/18 at 5.)

- 12 -

Specifically, appellants set forth the following argument pertaining to the settlement at issue:

> The evidence of record before the trial court revealed that . . . the negotiations that resulted in the landlord/tenant settlement dealt only with resolution of the landlord/tenant judgment. The material consideration ultimately agreed upon and exchanged pursuant to the landlord/tenant settlement flowed only from Ms. Vendetti and Ms. Fink to [Fairmount LLC] in resolution of the landlord/tenant judgment. . . . [T]hose negotiations ensued and were able to bear fruit only after Ms. Vendetti was forced to concede her specious claims in the underlying litigation based upon [] appellants successfully moving for summary judgment in the underlying litigation . . . . Finally, . . . Ms. Vendetti withdrew her specious appeal of the Dragonetti summary judgment. Moreover, and perhaps most significantly, Ms. Vendetti did not believe her appeal was withdrawn as a result of that settlement. Rather, . . . she had already effectively abandoned that claim—her testimony was that she thought the appeal had been withdrawn before the settlement was reached. In fact, [it is] unclear from the record if Ms. Vendetti even authorized [Mr.] Corcoran to file the appeal.

Appellants' brief at 35-36 (extraneous capitalization and emphasis omitted).

The record belies appellants' argument. Indeed, Paragraph 5 of the August 14, 2015 settlement agreement and mutual release executed by the parties of the underlying litigation required Ms. Vendetti to file a praecipe to withdraw her then-pending appeal with prejudice within five business days. (Appellants' amended complaint Exhibit 16 at 4, ¶ 5; Mr. Corcoran's answer to appellants' amended complaint with new matter Exhibit D at 4, ¶ 5; R.R. at 779a.) Fairmount LLC was then required to file a praecipe to satisfy the

judgment at issue and Fairmount LLC was precluded from taking any action to enforce its judgment if Ms. Vendetti "filed a praecipe to discontinue [her appeal in the underlying litigation] as required by Paragraph 5[,]" of the settlement agreement. (Appellants' amended complaint Exhibit 16 at 4, ¶¶ 6-7; Mr. Corcoran's answer to appellants' amended complaint with new matter Exhibit D at 4, ¶¶ 6-7; R.R. at 779a.) Moreover, the plain language of the settlement agreement reflects that Ms. Vendetti's filing of the praecipe to discontinue her appeal was a condition precedent to Fairmount LLC's obligation to file a praecipe to satisfy the judgment at issue and to take no action to enforce the judgment. (Appellants' amended complaint Exhibit 16 at 4, ¶¶ 6-7; Mr. Corcoran's answer to appellants' amended complaint with new matter Exhibit D at 4, ¶¶ 6-7; R.R. at 779a.)

The record further reflects that on August 27, 2015, Ms. Vendetti filed with this court a praecipe for discontinuance, thereby withdrawing and discontinuing her appeal. (Mr. Corcoran's preliminary objections to appellants' complaint, Exhibit C3; Mr. Corcoran's preliminary objections to appellants' amended complaint, Exhibit C3; Mr. Corcoran's answer to appellants' amended complaint with new matter, Exhibit C3; Mr. Corcoran's motion for summary judgment, Exhibit W; R.R. at 168a, 1379a.) Moreover, an August 20, 2015 e-mail between Mr. Corcoran and appellants' counsel reflects that the praecipe to discontinue was filed with this court "[a]s a consequence of the settlements reached" between the parties in the underlying litigation.

(Mr. Corcoran's answer to appellants' amended complaint with new matter, Exhibit E; R.R. at 907a-908a (emphasis omitted).)

Our analysis cannot end here. Indeed, appellants aver that the trial court erred when it concluded that appellants offered no evidence that the withdrawal of the appeal in the underlying litigation was an unbidden abandonment of a claim brought in bad faith. (Appellants' brief at 39; *see* trial court opinion, 11/26/18 at 5-6.) Appellants further aver that the trial court's conclusion was contrary to the record. (Appellants' brief at 39.)

While the record is viewed in the light most favorable to the non-moving party in summary judgment proceedings, the non-moving party is not without burden in summary judgment litigation. Indeed, our supreme court has held that,

> a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

*Ertel v. Patriot-News Co.*, 674 A.2d 1038, 1042 (Pa. 1996), *cert. denied*, 519 U.S. 1008 (1996).

Here, as discussed in detail above, appellants failed to sufficiently adduce evidence or prove that the underlying litigation terminated in their favor, as is required for a Dragonetti cause of action. *See* 42 Pa.C.S.A. § 8351(a)(2). In their argument, appellants direct us to the evidence

presented in their successful opposition to Mr. Corcoran's preliminary objections, Ms. Vendetti's deposition testimony, and appellants' expert report prepared by Steven Angstreich, Esquire ("Attorney Angstreich"). (Appellants' brief at 39-42.)

First, appellants rely upon the evidence they presented when they successfully opposed defendant's preliminary objections. As will be discussed in detail below, a trial court is not bound by its rulings from preliminary objections when considering a motion for summary judgment in the same case.

Next, plaintiffs cite to Ms. Vendetti's deposition testimony. When questioned by appellants' counsel, Ms. Vendetti testified as follows:

> Q. Do you know what happened to the appeals that were filed on your behalf by Mr. Corcoran?
>
> A. I don't recall specifically. I assume they weren't granted.
>
> . . . .
>
> Q. Do you know?
>
> A. No, I don't know.
>
> Q. You have no knowledge whatsoever as to what happened to the appeals, correct?
>
> A. I believe that they were not successful, whatever your terminology is, I don't know.
>
> Q. Do you know whether Mr. Corcoran dismissed the appeals or whether the court ruled on the appeals?

A.     I don't recall.

Q.     If I told you that Mr. Corcoran dismissed the appeals, would that refresh your recollection or not?

A.     It might be helpful to see a timeline, but no.

Q.     So you have no information sitting here today as to whether the appeals were dismissed, and if they were, the reason they were dismissed?

A.     I don't recall specifically. Like I said, if there was a timeline or -- I mean you're sitting in front of a mountain of documents here and I am not -- like I'm not familiar with all of these documents, so . . .

Q.     I'm not asking you about the documents, I'm just asking about --

A.     It's four years ago. What do you want?

Q.     It's not four years ago. It's less than three years ago, is it not? The settlement agreement was signed on August 14th of 2015, correct?

A.     Correct.

Q.     Okay. We're in May of 2018, you would agree with me that's less than three years?

A.     Like I said, having a timeline of these things would be helpful. And I can probably piece that together, but the original was March of 2014.

Q.     The original lawsuit.

A.     The original lawsuit, right.

Q.     Correct. I'm just talking about the appeals. My question is that -- and if you don't know the answer, that's fine, I just want to finish the circle. That is, that sitting here today you have

> no understanding as to why the appeals taken by you were dismissed; is that a fair statement?
>
> A. Okay. All right. I think this is what you're getting at, is that leading up to the settlement agreement, those appeals were dropped.
>
> Q. Is that your understanding?
>
> A. That is my understanding, yes.
>
> Q. Okay. And then after they were dropped, you entered into the settlement agreement, that's your understanding?
>
> A. Yes.

Appellants' response in opposition to Mr. Corcoran's motion for summary judgment, Exhibit 16, notes of testimony, 5/30/18 at 75-78; R.R. at 2161a-2162a.

As noted above, Ms. Vendetti's understanding that the appeal in the underlying litigation was withdrawn **prior** to entering into the settlement agreement is belied by the record. Indeed, the record reflects that the praecipe for discontinuance was filed with this court **after** the parties executed the settlement agreement, pursuant to the terms of the settlement agreement. (**See** Mr. Corcoran's preliminary objections to appellants' complaint, Exhibit C3; Mr. Corcoran's preliminary objections to appellants' amended complaint, Exhibit C3; Mr. Corcoran's answer to appellants' amended complaint with new matter, Exhibit C3; Mr. Corcoran's motion for summary judgment, Exhibit W; R.R. at 168a, 1379a.) Moreover, as noted above, the August 20, 2015 e-mail between Mr. Corcoran and appellants'

counsel reflects that the appeal was discontinued as a result of the terms of the settlement agreement. (**See** Mr. Corcoran's answer to appellants' amended complaint with new matter, Exhibit E; R.R. at 907a-908a.)

Finally, appellants direct us to Attorney Angstreich's expert report. Therein, Attorney Angstreich concludes that the appeal in the underlying litigation "lacked meritorious grounds and was solely intended to protract the underlying litigation to leverage a settlement and was therefore brought in bad faith. . . . [Mr. Corcoran's] withdrawal of the appeal on August 27, 201[5], was, therefore, 'tantamount to [an] unbidden abandonment of a claim brought in bad faith.'" (Appellants' response in opposition to Mr. Corcoran's motion for summary judgment, Exhibit 9, 8/28/18 at 17; R.R. at 2048a (extraneous capitalization omitted), citing **Contemporary Motorcar Ltd. v. MacDonald Illig Jones & Britton, LLP**, 2013 WL 11253857 at *4 (Pa.Super. filed September 19, 2013) (unpublished memorandum), **appeal denied**, 89 A.3d 1285 (Pa. 2014).) Attorney Angstreich concluded that the underlying litigation terminated in favor of plaintiffs. (Appellants' response in opposition to Mr. Corcoran's motion for summary judgment, Exhibit 9, 8/28/18 at 17-18; R.R. at 2048a-2049a.)

Appellants' production of an expert report with a conclusion in their favor does not automatically ensure that they will be able to defeat a motion for summary judgment. Indeed, as noted above, when considering a motion for summary judgment, a court is required to view **all** evidence of record in the

light most favorable to the non-moving party. **Criswell**, 115 A.3d at 908-909 (emphasis added). Here, when viewing all of the evidence of record in the light most favorable to appellants as the non-moving party, the trial court concluded that appellants failed to establish the favorable termination element of a Dragonetti cause of action and entered summary judgment in favor of Mr. Corcoran and against appellants because Ms. Vendetti's praecipe to discontinue the underlying appeal was filed pursuant to the terms of the settlement agreement. (Trial court opinion, 11/26/18 at 6; **see also** 42 Pa.C.S.A. § 8351(a)(2); **Ertel**, 674 A.2d at 1042 ("Failure to adduce [sufficient evidence on an issue essential to a case] establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.").) Accordingly, in light of the express terms of the August 14, 2015 settlement agreement, viewed in the light most favorable to appellants, we find that the trial court did not abuse its discretion when it granted Mr. Corcoran's motion for summary judgment.

## C.

Appellants next aver that the trial court erred when it granted Mr. Corcoran's motion for summary judgment after previously overruling Mr. Corcoran's preliminary objections to appellants' amended complaint because doing so "runs afoul" of the law of the case doctrine. (Appellants' brief at 44.) Specifically, appellants contend that Mr. Corcoran's preliminary

objections and motion for summary judgment "were based upon the exact same evidence and the exact same legal arguments[.]" (*Id.*)

The law of the case doctrine provides, in relevant part, that "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal position previously decided by the transferor trial court." *Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 282 (Pa.Super. 2016) (citations omitted). The law of the case doctrine, however, does not prohibit a trial judge from revisiting his or her own pretrial rulings. *Wright v. Misty Mountain Farm, LLC*, 125 A.3d 814, 818 (Pa.Super. 2015), *appeal denied*, 140 A.3d 14 (Pa. 2016), citing *Morgan v. Petro. Products Equip. Co.*, 92 A.3d 823, 827 (Pa.Super. 2014). This court has specifically noted that where the motions "differ in kind," such as preliminary objections and a motion for summary judgment, "a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion." *Neidert v. Charlie*, 143 A.3d 384, 391 (Pa.Super. 2016), *appeal denied*, 164 A.3d 457 (Pa. 2016), citing *Parker v. Freilich*, 803 A.2d 738, 745 (Pa.Super. 2002), *appeal denied*, 820 A.2d 162 (Pa. 2003) (citation omitted).

Here, the trial court may reconsider its pretrial rulings without violating the law of the case doctrine. Accordingly, we find that the trial court did not violate the law of the case doctrine when it granted Mr. Corcoran's motion for

summary judgment after previously overruling Mr. Corcoran's preliminary objections to appellants' amended complaint.

**D.**

In their final issue, appellants contend that the trial court erred when it concluded that Mr. McDavid is personally bound to the landlord/tenant settlement agreement. (Appellants' brief at 50.) In their argument, appellants rely on this court's decisions in *Georgiana v. United Mine Workers of Am., Int'l. Union by Trumpka*, 572 A.2d 232 (Pa.Super. 1990), and *Buchleitner v. Perer*, 794 A.2d 366 (Pa.Super. 2002), *appeal denied*, 808 A.2d 568 (Pa. 2002). (Appellants' brief at 50.) Both of these cases are readily distinguishable from the instant case.

In *Georgiana*, a labor union filed a cause of action sounding in fraud against Mark A. Georgiana and his wife, R. Diane Georgiana. *Georgiana*, 572 A.2d at 233. The underlying cause of action specifically accused Mrs. Georgiana of fraud. *Id.* The underlying cause of action terminated when Mrs. Georgiana and the labor union entered into a settlement agreement. *Id.* As a result of the settlement agreement, the complaint against Mr. and Mrs. Georgiana was dropped. *Id.* Mr. Georgiana stated that he did not participate in the execution of the settlement agreement, specifically averring that "no settlement was demanded from nor reached with [him.]" *Id.* at 234-235 (citation omitted).

Mr. Georgiana subsequently brought a Dragonetti cause of action against the labor union. *Id.* at 233. The labor union filed preliminary objections on the grounds that Mr. Georgiana could not recover in a Dragonetti cause of action because the underlying litigation did not terminate in his favor, and the trial court sustained the labor union's preliminary objections. *Id.* On appeal, this court stated that it could not, "agree that the unilateral action of one party in negotiating a settlement necessarily binds another party who did not participate in that settlement, simply because the parties are named defendants in the same suit." *Id.* at 235. The panel further recognized "that a settlement with one party may be effective against another party in the sense that a factfinder could determine that the withdrawal of the entire suit does not represent a termination in favor of the second party." *Id.* (emphasis omitted). Accordingly, this court held that the effect of Mrs. Georgiana's settlement was "a question that [was] properly reserved to the factfinder, and was not a proper ground upon which to grant the demurrer." *Id.* The court further noted that, "the question of whether one defendant's settlement of an action should bind another defendant must depend on the particular circumstances surrounding that settlement, and not upon the status of the parties." *Id.*

In **Buchleitner**, the underlying litigation involved a federal case brought against a high school principal and other parties. **Buchleitner**, 794 A.2d at 367. The federal court dismissed the principal from the underlying litigation

by an entry of summary judgment. ***Id.*** at 368. The underlying litigation ultimately concluded in a settlement, which included a release that was executed as to all named defendants, including the principal, despite his earlier dismissal from the litigation. ***Id.*** The principal raised a Dragonetti cause of action against the underlying plaintiff's counsel, who subsequently filed a motion for summary judgment, averring that the appellant did not have a "favorable outcome" in the underlying federal case, as required by Dragonetti. ***Id.*** at 368-369. The trial court granted the motion for summary judgment, "based solely upon the release in the federal case." ***Id.*** at 369 (emphasis omitted).

On appeal, this court noted that the principal "had not been a party to the settlement agreement, no settlement had been demanded or reached with him, he had not been given the opportunity to consent to any type of compromise, and the settlement had never been discussed with him." ***Id.*** at 375, citing ***Georgiana***, 572 A.2d at 235. This court ultimately held that the principal's case "contain[ed] a material issue of fact concerning the effect the plaintiff's settlement with the remaining defendants in the federal case should have on the 'favorable outcome' prong of [the principal's Dragonetti] cause of action." ***Buchleitner***, 794 A.2d at 375-376 (citations omitted).

Here, Mr. McDavid alleges that he only executed the underlying settlement agreement in his capacity as the managing member of Fairmount LLC. (Appellants' brief at 52.) Mr. McDavid further argues that if

the parties to the underlying litigation "intended for Mr. McDavid to be bound individually, Mr. McDavid would have been named as an actual party to the landlord/tenant settlement in his individual capacity, and a signature block for him, individually, would have been included. (**Id.** at 52-53 (extraneous capitalization and emphasis omitted).) In its opinion, the trial court determined that appellants' argument was "unavailing." (Trial court opinion, 11/26/18 at 6 n.9.) The trial court further concluded as follows:

> Though Mr. McDavid is not named in the settlement agreement, it is clear from the language of that agreement that he is covered and bound by it as the managing member of Fairmount LLC. In Paragraphs 4(c) and 4(d), the members of Fairmount LLC agree to release Ms. Vendetti and Ms. Fink, respectively, with language that directly implicates the managing member, who is Mr. McDavid. It should be further noted that Mr. McDavid signed the settlement agreement on behalf of Fairmount LLC. [The trial] court [found] that Mr. McDavid is directly and explicitly part of, covered by, and bound by the settlement agreement.

***Id.***

Unlike Mr. Georgiana and the principal in ***Buchleitner***, the record in the instant case reflects that Mr. McDavid directly participated in the negotiation of the settlement agreement at issue in the instant case, albeit in his capacity as the managing member of Fairmount LLC. As noted by the trial court, Paragraphs 4(c) and 4(d) of the settlement agreement contain the following language directly implicating Mr. McDavid: ". . . this Release shall not release any claims against Conor Corcoran, Esquire, by [Fairmount LLC] or

[Mr.] McDavid." (Appellants' amended complaint Exhibit 16 at 3, ¶¶ 4(c), 4(d); Mr. Corcoran's answer to appellants' amended complaint with new matter Exhibit D at 3, ¶¶ 4(c), 4(d); R.R. at 778a.) Moreover, Mr. McDavid's signature appears on the settlement agreement. (**See** appellants' amended complaint Exhibit 16 at 6; Mr. Corcoran's answer to appellants' amended complaint with new matter Exhibit D at 6; R.R. at 781a.) As noted above, the record reflects that Mr. Corcoran filed the praecipe to discontinue as a result of the execution of the settlement agreement. (**See** Mr. Corcoran's answer to appellants' amended complaint with new matter, Exhibit E; R.R. at 907a-908a.) Accordingly, we find that the trial court did not abuse its discretion when it determined that the underlying litigation was not terminated favorably to Mr. McDavid.

Order affirmed.

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 6/23/2020