Margaret. T. PETRINA, Executrix of Joseph E. Petrina, Deceased, and Margaret T. Petrina, in her Own Right, Appellant

v.

ALLIED GLOVE CORPORATION, Champlain Cable Corporation, as Successor–in–Interest to Hercules Inc.; Crane Co., Crown Cork and Seal Company; F.B. Wright Company; George V. Hamilton, Inc., Georgia Pacific Corporation; Goulds Pumps, Inc.; Honeywell, Inc.; Itt Corporation, f/k/a/ Itt Industries; I.U. North America, Inc., as Successor By Merger to the Garp Company, Formerly Known As The Gage Company, Formerly Known as Pittsburgh Gage And Supply Company; Industrial Holdings Corporation f/k/a Carborundum Company; Ingersoll–Rand; Kaiser Gypsum Company, Inc., Kentile Floors, Inc.; McClure–Johnston Company; Mine Safety Appliance Company; Safety First Industries, Inc., in its Own Right And As Successor–in–Interest to Safety–First Supply, Inc.; Union Carbide Corporation and its Linde Division, Appellees.

Superior Court of Pennsylvania.

Argued March 27, 2012.

Filed June 8, 2012.

John R. Kane, Pittsburgh, for appellant.

Katherine E.S. Anderson, Pittsburgh, for Union Carbide, appellee.

BEFORE: DONOHUE, LAZARUS and OTT, JJ.

OPINION BY DONOHUE, J.:

Appellant, Margaret. T. Petrina ("Petrina"), Executrix of the Estate of Joseph E. Petrina, deceased ("Deceased"), and in her own right, appeals from the order entered on December 30, 2008, in the Court of Common Pleas of Allegheny County granting summary judgment in favor of Appellee, Union Carbide Corporation ("Union Carbide"). Petrina contends that the trial court erred in ruling that answers to interrogatories submitted in response to Union Carbide's motion for summary judgment were inadmissible hearsay and thus did not constitute evidence of record showing a genuine issue of fact for trial. Concluding that the trial court's ruling was in error, we reverse the order granting summary judgment and remand the case for further proceedings.

On April 25, 2008, Petrina filed a complaint against various manufacturers and suppliers of asbestos-containing products. Petrina alleged that exposure to asbestos during the course of Deceased's career on various construction projects during the 1950s through the 1970s caused him to contract mesothelioma that resulted in his death. After the close of discovery, on September 28, 2008, Union Carbide filed a motion for summary judgment for lack of product identification, asserting that no evidence demonstrated that Deceased had been exposed to any asbestos-containing product attributable to Union Carbide.

In her response, Petrina produced deposition testimony from various witnesses,

including the Petrina children, that Deceased had breathed in asbestos dust from a joint compound called "Gold Bond" manufactured by National Gypsum, a non-party to this case as a result of its bankruptcy. Union Carbide does not deny that it owned and operated asbestos mines during the time of Deceased's exposure to dust from Gold Bond, or that it was one of several suppliers of asbestos to National Gypsum for use in the manufacturer of Gold Bond during the relevant time period. Such evidence from Petrina, without more, would be insufficient to avoid summary judgment, since it would not constitute evidence that Union Carbide was the supplier of the asbestos in the Gold Bond to which Deceased was exposed. Accordingly, in her response to Union Carbide's summary judgment motion, Petrina offered answers to interrogatories filed by National Gypsum in 1984 in a California case (*Tollett, et al. v. Johns–Manville Corp.*, No. C322816, County of Los Angeles, California). In the answers to interrogatories, National Gypsum stated that Union Carbide was the exclusive supplier of asbestos used in National Gypsum's Gold Bond joint compound from 1967 until 1975.[1] The answers to interrogatories were verified by an affidavit signed by Robert Oberkircher, the assistant controller of National Gypsum's Gold Bond Building Products Division. Mr. Oberkircher is now deceased.

At oral argument on Union Carbide's motion for summary judgment, Petrina indicated that she intended to call at trial a corporate representative of National Gypsum to testify consistent with the facts contained in the *Tollett* interrogatory answers. Petrina further stated that in the unlikely event that the corporate representative denied Union Carbide was National Gypsum's exclusive supplier of asbestos after 1967, then the *Tollett* answers to interrogatories would be admissible as substantive evidence as a prior inconsistent statement pursuant to Rule 803.1(1) of the Pennsylvania Rules of Evidence. After considering the parties' submissions, legal arguments and briefs, the trial court granted summary judgment in favor of Union Carbide by order dated December 30, 2008.

■ This timely appeal followed, in which Petrina raises two issues for our consideration. First, Petrina contends that the trial court applied the wrong standard of review when deciding Union Carbide's motion for summary judgment, as it viewed the evidence in the light most favorable to the moving party rather than the non-moving party. In particular, Petrina argues that the trial court's focus on the hearsay nature of National Gypsum's answers to interrogatories was inappropriate, as this evidence constituted a proper response in opposition to a motion for summary judgment. Second, Petrina claims that the trial court erred in ruling that Rule 803.1(1) does not apply to prior inconsistent statements by corporate entities. We will address each issue in turn.

With respect to the first issue, our standard of review of an order granting sum-

---

1. In its answers to interrogatories, National Gypsum stated:

    Around 1967, National Gypsum switched to Union Carbide SG–210 fiber because the fiber's superior quality enabled National Gypsum to use less asbestos in their materials. Asbestos was utilized in Gold Bond joint materials generally to improve workability and to provide strength and durabili-
    ty.... Sales of joint treatment materials containing asbestos may have continued into 1976. Joint treatment materials manufactured by National Gypsum after 1975 did not contain asbestos.

    Plaintiff's Consolidated Response to all Defendants' Motions for Summary Judgment, Exhibit 19 at 2–3.

mary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of Am.,* 908 A.2d 344, 347 (Pa.Super.2006). Our scope of review is plenary. *Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied,* 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). In reviewing a trial court's grant of summary judgment,

> we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either

(1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Chenot v. A.P. Green Services, Inc.,* 895 A.2d 55, 61 (Pa.Super.2006) (internal citations and quotation marks omitted).

Rule 1035.3 of the Pennsylvania Rules of Civil Procedure states in pertinent part:

**Rule 1035.3. Response. Judgment for Failure to Respond**

(a) Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying

> (1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or
>
> (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

Pa.R.C.P. 1035.3. Rule 1035.1 defines the "record" as follows:

**Rule 1035.1. Motion for Summary Judgment. Definition**

As used in Rule 1035.1 et seq., 'record' includes any

> (1) pleadings,
>
> (2) depositions, answers to interrogatories, admissions and affidavits, and
>
> (3) reports signed by an expert witness that would, if filed, comply with Rule 4003.5(a)(1), whether or not the

reports have been produced in response to interrogatories.

Pa.R.C.P. 1035.1.

Read together, Rules 1035.3 and 1035.1(2) provide that answers to interrogatories constitute evidence of record that may properly be relied upon by the non-moving party in response to a motion for summary judgment. In this case, however, the trial court ruled that the National Gypsum answers to interrogatories constituted "inadmissible hearsay as to the Defendant Union Carbide." Trial Court Opinion, 9/2/11, at 2.

The Pennsylvania Rules of Civil Procedure authorize the use of hearsay to defeat a summary judgment motion. For example, affidavits and expert reports are classic examples of hearsay as defined by our Rules of Evidence—namely "a statement, other than one made · by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Yet Rules 1035.1 and 1035.3 plainly provide that affidavits and expert reports may be used by the non-moving party to create an issue of material fact to defeat a motion for summary judgment. Pa.R.C.P. 1035.1, 1035.3. Likewise, the Rules explicitly authorize the use of answers to interrogatories. Pa.R.C.P. 1035.1. Moreover, in this case Petrina has explained how the material in National Gypsum's answers to interrogatories may be introduced at trial in an admissible form, namely by presenting the testimony of another authorized corporate representative of National Gypsum to affirm the contents of the answers to interrogatories, or if necessary, by moving the answers to interrogatories into evidence as prior inconsistent statements under Pa. R.E. 803.1(1).

▮ The fact that the corporate representative (Mr. Oberkircher) was deceased at the time that Petrina submitted National Gypsum's answers to interrogatories did not disqualify that evidence from inclusion in the Rule 1035.1 record for summary judgment purposes. A corporation is a creature of legal fiction, which can act or "speak" only through its officers, directors, or other agents. *Lokay v. Lehigh Valley Co-op. Farmers, Inc.,* 342 Pa.Super. 89, 492 A.2d 405, 408–09 (1985); *Rutherfoord v. Presbyterian–University Hosp.,* 417 Pa.Super. 316, 612 A.2d 500, 508 (1992); *Pollock Industries, Inc. v. General Steel Castings Corp.,* 203 Pa.Super. 453, 201 A.2d 606, 611 (1964). Where a representative for a corporation acts within the scope of his or her employment or agency, the representative and the corporation are one and the same entity, and the acts performed are binding on the corporate principal. *See, e.g., Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc.,* 360 Pa.Super. 72, 519 A.2d 997, 1000–01, *appeal denied,* 517 Pa. 599, 535 A.2d 1057 (1987).

In this case, the *Tollett* interrogatories were directed to National Gypsum, and its answers in response were entitled "National Gypsum Company's Responses to Interrogatories Propounded by Plaintiffs." Plaintiff's Consolidated Response to all Defendants' Motions for Summary Judgment, Exhibit 19 at 1. The first line of text states that "[National Gypsum] hereby responds to interrogatories propounded by plaintiffs as follows ..." *Id.* Mr. Oberkircher specifically represented that he was "authorized to make this affidavit" verifying National Gypsum's answers to the interrogatories. *Id.* at 5. Based upon these uncontested facts of record, the answers to interrogatories at issue here were the statements of the corporation, National Gypsum, and reflected the knowledge of the corporation on the issues addressed. The answers to interrogatories were not in any respect the personal representations

of its designated agent, Mr. Oberkircher. As a corporation may only "speak" through its agents, Mr. Oberkircher merely served as the "mouthpiece" for National Gypsum in answering the interrogatories in the *Tollett* case. Accordingly, Mr. Oberkircher's subsequent death was irrelevant for purposes of Petrina's use of the answers to interrogatories in response to Union Carbide's motion for summary judgment.

In its appellate brief, Union Carbide points to cases from this Court holding that "a motion for summary judgment cannot be supported or defeated by statements that include inadmissible hearsay evidence." Union Carbide's Brief at 8. While we have so ruled on several occasions, these cases have no application here, as they all involved situations in which the person providing the information had no direct or independent knowledge and was instead merely passing along material gleaned from third parties. In *Samarin v. GAF Corp.*, 391 Pa.Super. 340, 571 A.2d 398 (1989), for instance, the plaintiff submitted affidavits and deposition testimony from tradesmen and co-workers of the deceased regarding the existence of asbestos in workplace products. *Id.* at 403. We rejected these efforts to defeat summary judgment because these declarants had no direct knowledge as to whether or not the products at issue contained asbestos, as they all admitted that "they had been told so by others." *Id.; see also Rosenberry v. Evans*, 48 A.3d 1255, 1264, 2012 WL 1383051 (Pa.Super.2012) ("Mother had no personal knowledge of the facts underlying the rumors, and we will not rely on inadmissible hearsay to find a genuine issue of material fact."); *Godlewski v. Pars Mfg. Co.*, 408 Pa.Super. 425, 597 A.2d 106, 110 n. 5 (1991) ("Our examination of Slusser's deposition testimony indicates that his knowledge of the identity of Stic-tite as one of the [asbestos-containing] products used at Foster–Wheeler was based upon out of court statements made by his co-workers.").

Similarly, in an action involving allegations that a recently incapacitated man had been misled by a sales agent regarding the nature of various investments, we rejected attempts at the summary judgment stage to use the testimony of the incapacitated man's daughter to confirm his pre-incapacitation descriptions of their dealings because she lacked any direct knowledge. *Botkin v. Metropolitan Life Ins. Co.*, 907 A.2d 641, 649 (Pa.Super.2006) ("The oral deposition of Banes' daughter/Appellant Botkin shows that she was not present during conversations Banes had with MetLife's sales agent.... Banes' daughter cannot, therefore, substantiate the allegations about [their discussions]."); *see also Isaacson v. Mobile Propane Corp.*, 315 Pa.Super. 42, 461 A.2d 625, 629–30 (1983) (hospital record inadmissible because "no one knows who supplied the information concerning the alleged incident to the treating physician").

The present case, in contrast, involves no such use of third-party hearsay evidence. Instead, the answers to interrogatories at issue here constitute the collective knowledge of the corporation (National Gypsum) with respect to the questions propounded to it in the *Tollett* case. California law in effect in 1984 at the time that National Gypsum answered the interrogatories provided in relevant part as follows:

> (a) Any party may file and serve upon any adverse party written interrogatories to be answered by the party served, or if the party served is a public or private corporation or a partnership or association, or body politic, by any officer or agent, *who shall furnish such information as is available to the party.*

Cal.Code Civ. Proc. 2030(a) (*repealed*) (emphasis added); *Mowry v. Superior Court of County of El Dorado*, 202 Cal. App.2d 229, 20 Cal.Rptr. 698, 700 (1962), *rev'd in part on other grounds, San Diego Professional Ass'n v. Superior Court of San Diego County*, 58 Cal.2d 194, 23 Cal. Rptr. 384, 373 P.2d 448 (1962). The highlighted language mirrors that of Pennsylvania's current discovery rule counterpart. Pa.R.C.P. 4005(a) ("who shall furnish such information as is available to the party").

Accordingly, we conclude that National Gypsum's answers to interrogatories constituted the firsthand knowledge of the corporation with respect to the questions posed as communicated through its chosen spokesperson. For these reasons, the trial court should not have excluded National Gypsum's answers to interrogatories from the evidence of record for purposes of Union Carbide's motion for summary judgment. The trial court concedes that the answers to interrogatories "create a material fact from which a jury might infer that Union Carbide was an exclusive supplier of asbestos to National Gypsum for use in the Gold Bond joint compound products." Trial Court Opinion, 9/2/11, at 4. Having determined that the answers to interrogatories should have been included in the evidentiary record, we conclude that the entry of summary judgment in favor of Union Carbide was error.

In the second issue on appeal, Petrina argues that if a designated National Gypsum corporate representative testifies at trial contrary to the information contained in the answers to interrogatories in the *Tollett* case, then the answers to interrogatories would be admissible as substantive evidence. In *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992), our Supreme Court held that a prior inconsistent statement may be used as substantive evidence at trial when it was provided under "highly reliable circumstances," including where given under oath in a prior legal proceeding, where reduced to writing and adopted by the declarant, or where recorded *verbatim* contemporaneously with the making of the statement. *Id.* at 471, 610 A.2d at 10; *see, e.g., Commonwealth v. Chmiel*, 558 Pa. 478, 503, 738 A.2d 406, 419 (1999).

Rule 803.1(1) of the Pennsylvania Rules of Evidence now governs the admissibility of prior inconsistent statements and explicates the "highly reliable circumstances" first discussed in *Lively*.

**Rule 803.1. Hearsay exceptions; testimony of declarant necessary**

The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement:

(1) Inconsistent statement of witness. A statement by a declarant that is inconsistent with the declarant's testimony, and (a) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) is a writing signed and adopted by the declarant, or (c) is a verbatim contemporaneous recording of an oral statement.

Pa.R.E. 803.1(1). Because National Gypsum's answers to interrogatories in *Tollett* is a writing signed and adopted by National Gypsum, it is encompassed by Pa.R.E. 803.1(1)(b). Because it was also given under oath, its reliability is further enhanced.

The trial court ruled that Rule 803.1(1) cannot apply in this case because the prior inconsistent statement must have been made "by the individual who testifies at trial." Trial Court Opinion, 9/2/11, at 3. The trial court found that Rule 803.1(1) does not allow the admission of "a prior inconsistent statement by a declarant who is not the same individual as the witness

who testifies at the time of trial." *Id.* at 4. In other words, the pretrial "declarant" must be the same person as the "declarant" at trial, and because Mr. Oberkircher is now deceased and thus cannot be called to testify at trial, Rule 803.1(1) can have no application in this circumstance.

The trial court's decision is based upon the faulty premise that the statements in the answers to interrogatories at issue here are those of Mr. Oberkircher. As established hereinabove, the statements in the answers to interrogatories are exclusively those of the corporation, National Gypsum, and not those of Mr. Oberkircher. For purposes of Rule 803.1(1), the "declarant" is National Gypsum, and thus if another duly authorized National Gypsum corporate representative offers testimony at trial inconsistent with the answers to interrogatories, Rule 803.1(1) would apply.

The trial court's order entering summary judgment in favor of Union Carbide is reversed and the case remanded to the trial court for further proceedings. Jurisdiction relinquished.