J-A17033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN V. HEALY AND AMY ROHAN DEMIS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 2871 EDA 2023 |
| T.A.G. BUILDERS, INC., AND GREENSTONE DEVELOPMENT II CORPORATION A/K/A GREENSTONE DEVELOPMENT II, CORP., PETER BATCHELOR, ARCHITECT, AND PETER BATCHELOR AND ASSOCIATES, SUPPLEE CONSTRUCTION, LLC, RIEHL CONSTRUCTION, LLC, CONNOLLY PLASTERING AND STUCCO, INC., J & J CONSTRUCTION | : | |

Appeal from the Order Entered September 19, 2023
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2020-02218-CT

BEFORE: BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED AUGUST 8, 2025**

John V. Healy and Amy Rohan Demis (collectively, "Appellants") appeal from an order granting summary judgment in favor of T.A.G. Builders, Inc. ("T.A.G."); Greenstone Development II Corporation a/k/a Greenstone Development II Corp. ("Greenstone"); and additional defendants Riehl Brothers Construction, LLC. ("Riehl Bros.") and Supplee Construction, LLC ("Supplee") (collectively, "Appellees"). In this action, Appellants initially brought design and construction defect claims against Appellees for a home

the Appellants took possession of in October 2011. After Appellees' initial summary judgment motion ("the initial summary judgment motion") was denied, a subsequent summary judgment motion ("the second summary judgment motion") was filed. Both summary judgment motions dealt with the same issue, whether the statute of repose for construction projects pursuant to 42 Pa.C.S.A. § 5536 was triggered by an untitled 2006 document from Westtown township ("2006 document") or a 2011 document presented by the Appellants entitled "Certificate of Occupancy Re-sale" ("2011 document"). The respective parties argued that their respective documents were "Certificates of Occupancy" which started the clock on the statute of repose. The trial court granted the second summary judgment motion in favor of Appellees. The issue before us is whether, in the light most favorable to the non-moving party, the trial court erred in concluding that the 2006 document produced by Appellees was a certificate of occupancy that triggered the statute of repose.

Following our review, we conclude that based on the applicable summary judgment standard, the trial court failed to view the record, including the 2006 document, Mr. Altschul's testimony, and expert testimony in the light most favorable to the non-moving parties, *i.e.*, Appellants. The issue of the contested certificates of occupancy are an issue of material fact that the trier of fact should determine. Consequently, we reverse.

The trial court set forth the following factual and procedural history:

[Appellants took possession of their home at 135 Hidden Pond Way in the ArborView development in West Chester, Pennsylvania ("the Home") on or around October 15, 2011.] On March 2, 2020, [Appellants] initiated this action by filing a writ of summons. On December 10, 2020, [Appellants] filed a complaint raising various claims related to purported defects in the design and construction of the[] [H]ome. [Appellants] named as defendants: 1.) [T.A.G.]; 2.) Greenstone . . .; 3.) Peter Batchelor & Associates, P.C., the architectural firm that provided design services; and 4.) Peter Batchelor.

[I[n February [] 2021, [T.A.G.] joined several third-party defendants[:] 1.) Riehl Bros. . . .; 2.) C. McNally Construction, Inc.; 3.) Connolly Plastering & Stucco, Inc.; 4.) J&J Construction; and 5. Supplee . . ..

After pleadings were closed and discovery completed, . . . motions for summary judgment . . . were filed.

Trial Ct. Op., 11/30/23, at 2.[1]

_____

[1] Following the grant of summary judgment in this case, which is the subject of this appeal, the trial court granted Appellants' motion for a final order and dismissed all claims against Peter Batchelor & Associates, P.C. and Peter Batchelor. We note that the September 19, 2023 order dismissing Appellants' claims against Peter Batchelor & Associates is docketed as an order granting plaintiffs' motion for a "***final order***" (emphasis added). However, apparently out of an abundance of caution, Appellants again sought a final order and moved to dismiss additional defendants McNally Construction, Inc., Connolly Plastering & Stucco, Inc., and J&J Construction, against whom Appellants had no claims and who had been joined by T.A.G. (to whom summary judgment had been granted). **See** Pls.' Mot. for a Final Order Dismissing All Remaining Defendants, 9/21/23. While there was no opposition to Appellants' second motion for a final order, the trial court appears to have taken no action regarding this uncontested motion. Given the trial court's order docketed as the grant of a motion for a "final order," and that neither the trial court nor the parties have suggested this appeal should be quashed, we will regard as done that which ought to have been done, *i.e.*, we consider the trial court's order in question to be a final order disposing of all claims. **See** Pa.R.A.P. 341(b), (c) (setting forth the requirements for a final order); ***see also Zitney v. Appalachian Timber Products, Inc.***, 72 A.3d 281, 285 (Pa. Super. 2013)
*(Footnote Continued Next Page)*

With respect to the motions for summary judgment, the trial court explained:

> On March 28, 2023, [the trial court first] denied Riehl Bros.' motion for summary judgment, which was based on the [s]tatute of [r]epose. The Riehl Bros. motion had been joined by [T.A.G.], Greenstone, and Supplee. [The court] stated in the . . . footnote [of the order denying the first round of summary judgment motions]: "There remains a genuine issue of material fact as to whether the document signed by the Westtown Township Building Inspector on June 30, 2006 [("the 2006 document")], is a Certificate of Occupancy, which would trigger the [s]tatute of [r]epose, 42 Pa.C.S.[A.] § 5536(a)." The [second round of] motions [for summary judgment] address[ed] this concern.
>
> * * * *
>
> Before the court [in the second round of summary judgment motions were the following]:
>
> 1. the motion of [T.A.G.] and Greenstone asserting the [s]tatute of [r]epose;
>
> 2. the motion of [T.A.G.] and Greenstone addressing contract claims, warranty claims, negligence claims, and claims for violation of the UTPCPL;
>
> 3. the motion of Riehl Bros. asserting the [s]tatute of [r]epose; Supplee . . . joined this motion; and

_____

(noting that this Court may exercise jurisdiction over an appeal in the interest of judicial economy where "the order from which an appeal is taken was clearly intended to be a final pronouncement . . .." (internal citations and quotations omitted); *accord Straw v. Fair*, 284 A.3d 899, 2022 WL 3149329 (Pa. Super. Aug. 8, 2022) (unpublished memorandum at *4) (concluding that, in the interest of judicial economy, this Court may look to the practical ramifications of an order and exercise jurisdiction over a case where there are no claims remaining and, therefore, the order appealed from is effectively a final order); Pa.R.A.P. 126(b) (non-precedential decisions from the Superior Court filed after May 1, 2019 may be cited for their persuasive value).

4. the motion of Riehl Bros. addressing the cross-claims brought by [T.A.G.] and Greenstone; Supplee . . . joined this motion.

* * * *

[After the second round of summary judgment motions, the trial court made the following findings of fact and conclusions of law:]

● On or about October 15, 2011, [Appellants] took possession of the home . . ..

● Prior to [Appellants'] purchase, this home had been the model for the ArborView Development.

● [Appellees] have come forward with evidence to establish that the June 30, 2006[] document is a Certificate of Occupancy.

● [Appellees] submitted the deposition of Westtown Township Manager, Jon Altschul [("Mr. Altschul")].

● Mr. Altschul oversees the building, zoning, and codes departments[,] and has reviewed building and occupancy permits issued by the Township, some having been created as far back as the 1970s.

● Mr. Altschul testified that the document signed on January 30, 2006[] by the Township's building inspector is a Certificate of Occupancy issued for [the Home]. (Altschul Deposition, 62:5-13).

● [T]the Certificate of Occupancy issued on January 30, 2006, prior to the use of the home as a model, [which] indicates that the home had gone through a multi-step, structural inspection process.

● When the Re-sale Certificate of Occupancy was issued on August 24, 2011, prior to [Appellants'] taking ownership, only a basic, life safety inspection had occurred.

● [Appellants] maintain that a document clearly titled "Certificate of Occupancy – Re-sale" is the original Certificate of Occupancy issued for the home[.]

- 5 -

• [A r]e-sale [c]ertificate, by its very name, indicates that a [c]ertificate of [o]ccupancy had issued earlier. A [r]e-sale [c]ertificate of [o]ccupancy has no impact on the application of the [s]tatute of [r]epose. . ..

Trial Ct. Op., 7/26/23, at 2-5 (paragraphs reordered; formatting altered to include bullet points).

As discussed more fully below, though the trial court relied on deposition testimony by Mr. Altschul, the court did not address Appellants' assertions that Mr. Altschul, during his deposition testimony, "could not even answer basic questions about the current process for issuing [c]ertificates of [o]ccupancy[,] much less the process in 2005[,]" *see* Pls.' Opp'n, 6/14/23, at ¶ 7; nor did the court address portions of Mr. Altschul's testimony in which he stated: he did not know what certificates of occupancy looked like in 2006, he could not verify who signed the 2006 document, and he was unaware of why all of the inspection information on the document was blank; nor did the trial court note the fact that the 2006 document differed in appearance from other certificates of occupancy for homes in the same development within the relevant time frame; and finally, the court did not address Appellants' expert report from the Falcon Group in which the expert opined that the certificate of occupancy was not issued until 2011.

The trial court ultimately entered the following orders:

The first, entered July 26, 2023, granted summary judgment to . . . T.A.G. . . . and Greenstone . . . and to . . . Riehl Bro[s.] and Supplee . . . based on the [s]tatute of [r]epose, 42 Pa.C.S.[A.] § 5536. The second order, entered September 19, 2023, granted [Appellants'] motion for a final order and dismissed

- 6 -

all claims against . . . Peter Batchelor & Associates, P.C., and Peter Batchelor.

Trial Ct. Op., 11/30/23, at 1-2. Appellants timely appealed, and both they and the trial court complied with Pa.R.A.P. 1925.

Appellants raise the following issues for our review:

1. Did the trial court err in granting [Appellees'] respective [m]otions for [s]ummary [j]udgment by finding that there was no issue of fact as to when the certificate of occupancy was issued, when it had already found in a prior round of motions for summary judgment that a genuine issue of material fact did indeed exist as to whether or not a certificate of occupancy was in fact issued in 2005, the first certificate of occupancy was actually issued in 2011, and therefore this action was timely under the construction [s]tatute of [r]epose, 42 Pa.C.S.[A.] § 5536?

2. Did the trial court err by determining that the selling entity, Greenstone—which [Appellees] admitted had no role in the design or construction of the home—had engaged in conduct protected by the [s]tatute of [r]epose, where Greenstone was not protected because it—unlike T.A.G. . . ., Peter Batchelor, or the subcontractors—played no role in the design or construction of the home?

Appellants' Brief at 5.

The applicable standard of review when summary judgment is granted views the record in the light most favorable to the non-moving party, and this Court is required to determine whether the trial court abused its discretion or committed an error of law and our scope of review is plenary. **See Petrina v. Allied Glove Corp.**, 46 A.3d 795, 797-798 (Pa. Super. 2012) (internal citations and quotations omitted; formatting altered; emphasis added).

In reviewing a trial court's grant of summary judgment, this Court applies the same standard as the trial court and reviews all the evidence of record to determine whether there exists a genuine issue of material fact:

> ***We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.***
>
> [Likewise, m]otions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense.
>
> [W]e [upon appellate review] are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Id*. at 797–98 (internal citations and quotations omitted; formatting altered; emphasis added).

- 8 -

In their first issue, Appellants argue the trial court erred in granting Appellees' motions for summary judgment based on its finding there was no dispute of material fact regarding when a certificate of occupancy was issued, triggering the statute of repose.

The relevant statute of repose, entitled "Construction projects," and codified at 42 Pa.C.S.A. § 5536, provides as follows:

> **(a) General rule.--**Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:
>
> (1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.
>
> * * * *

42 Pa.C.S.A. § 5536.

As this Court has explained, a statute of repose is a jurisdictional issue. *See Venema v. Moser Builders, Inc.*, 284 A.3d 208, 212 (Pa. Super. 2022). Generally, a statute of repose may not be tolled, "even in cases of extraordinary circumstances beyond a plaintiff's control." *Id*. at 213 (internal citation and quotations omitted). Where a defendant raises a defense indicating a statute of repose has lapsed and precludes liability, the defendant has the burden of proof and must show:

> (1) what is supplied [by defendant] is an improvement to real property; (2) more than twelve years have elapsed between the completion of the improvements to the real estate and the injury;

and (3) the activity of the moving party must be within the class which is protected by the statute[.]

*Id*. (internal citations, indentation, and unnecessary capitalization omitted).

More specifically, regarding the interplay between a certificate of occupancy and the statute of repose at issue, this Court has stated:

A residential building . . . may not be used or occupied until a certificate of occupancy is issued. The issuance of the certificate hinges on a satisfactory "final inspection" showing that the construction of the residence comports with the governing building codes. *See* Pennsylvania Uniform Construction Code, 34 Pa. Code § 403.65(a)-(b) ("A residential building may not be used or occupied without a certificate of occupancy issued by a building code official. . . . A building code official shall issue a certificate of occupancy after receipt of a final inspection report that indicates compliance with the Uniform Construction Code[.]").

There can be no satisfactory result to a final inspection, nor a certificate of occupancy, until construction of the residence is "completed." *See id*. at § 403.64(f) ("A construction code official shall conduct a final inspection of the completed construction work and file a final inspection report that indicates compliance with the Uniform Construction Code."); *see also Umbelina v. Adams*, 34 A.3d 151, 154 (Pa. Super. 2011) ("Upon completion of the home, [building inspector] issued the home's certificate of occupancy, which was an affirmative statement a builder can rely upon that the property meets all the applicable township codes.").

\* \* \* \*

We have also held that in this context, completion of the construction of such improvement, marks the commencement of the repose period at the point when third parties are first exposed to defects in design, planning, or construction.

*Id*. (some internal citations and quotations omitted; brackets in original).

In their first issue, Appellants argue that the trial court erred in granting summary judgment based on the statute of repose because there is a dispute

of material fact, namely, whether the applicable certificate of occupancy was issued in 2006 or 2011. **See** Appellants' Brief at 34. Appellants concede that where there is a certificate of occupancy, the statute of repose begins to run from the date of issuance of the certificate. **See id**. at 35 (discussing **Venema**). However, Appellants argue that evidence of record showed the certificate of occupancy was issued on or about August 24, 2011, which would bring them within the time frame of the statute of repose. **See id**. at 36.

Appellants assert that the document Appellees offer as a certificate of occupancy from 2006 is a building permit, not a certificate of occupancy. **See id**. Appellants note their own expert opined that the 2006 document was a building permit and the certificate of occupancy was issued in 2011. **See id**. at 36-37, 40-41. Appellants additionally argue the 2006 document is not fully executed (*i.e.*, the signature line for the zoning officer is blank); the document "looks nothing like the actual [c]ertificates of [o]ccupancy that the Township of Westtown was issuing at the time," and the document, on its face, purports to be a "permit application with notes from the township." **Id**. at 37. Appellants also note that a building inspector is not a "zoning official" as set forth in 34 Pa. Code § 403.65 and is not prescribed by statute to issue certificates of occupancy. **See** Appellants' Brief at 39. Appellants further note that 34 Pa. Code § 403.65 requires additional information the document Appellees rely on lacks. **See id**. at 38-39.

Appellants additionally assert that the trial court's order granting summary judgment hinged on a narrow reading of Mr. Altschul's deposition testimony. They argue Mr. Altschul's testimony was inconclusive for the following reasons: Mr. Altschul, who was not employed at Westtown until 2020, was admittedly not present when the 2006 document was signed and had no "personal knowledge as to Township actions related to the . . . [H]ome"; Mr. Altschul conceded he had "no experience with construction, code requirements, and building inspection"; he was not aware who had to "sign off on a certificate of occupancy"; he was not an expert on certificates of occupancy; and his opinion that the 2006 document was a certificate of occupancy was based on a presumption rather than on any confirmation such as comparing the document against contemporaneous certificates. *See id*. at 42-45.

In support of its ruling, the trial court explained as follows:

> The two-page document at issue is attached to the [T.A.G.]/Greenstone summary judgment motion . . .. At the bottom of the second page is a paragraph that begins with the words, "CERTIFICATE OF OCCUPANCY." Under this, on the line marked "Building inspector", is a signature followed by "1/30/06". . . . [T]he present day township manager identified this document as the Certificate of Occupancy for the [h]ome. On its face[,] this is the Certificate of Occupancy issue[d] for the Home in 2006. The certificate that issued when [Appellants] purchased the Home in 2011 is attached to the [T.A.G.]/Greenstone summary judgment motion . . .. This document is titled, "Certificate of Occupancy – Re-Sale." For the reasons stated, [the court] determined that there is no issue of fact that a Certificate of Occupancy was issued for the Home in 2006 prior to its use as a model home.

Trial Ct. Op., 11/30/23, at 4-5.[2]

The trial court did not address the missing signature on the 2006 document, or mention any of Mr. Altschul's equivocations about his lack of knowledge regarding procedures in 2006, or what a certificate of occupancy looked like in 2006; nor did the court address that other certificates of occupancy shown to Mr. Altschul appeared different from the 2006 document Appellees alleged was the certificate of occupancy in this matter.

When reviewed in the light most favorable to the Appellants as the non-moving party, we conclude the trial court committed an error of law granting summary judgment in favor of Appellees. There is a genuine dispute regarding which document is the certificate of occupancy, a material fact for purposes of the statute of repose. To aid the analysis, we note the following: in its March 28, 2023 order denying the initial summary judgment motion on the statute of repose issue, the court concluded: "There remains a genuine issue of material fact as to whether the document signed by the Westtown Township Building Inspector on June 30, 2006 is a Certificate of Occupancy[,] which would trigger the [s]tatute of [r]epose. [*See*] 42 Pa.C.S.A. § 5536(a)." Order, 3/28/23, at 1-2 n.1. Only four months later the court, in the opinion accompanying the order granting the second summary judgment motion,

---

[2] T.A.G. and Greenstone argue that the 2006 document is a certificate of occupancy for the reasons stated by the trial court. *See* T.A.G.'s and Greenstone's Brief at 12-21. Riehl Bros. argues the same. *See* Riehl Bros.' Brief at 18-30.

concluded, in relevant part, that "Mr. Altschul testified that the document signed on January 30, 2006 by the Township's building inspector is a Certificate of Occupancy issued for [the Home]." Trial Ct. Op., 7/26/23, at 3. The trial court again relied on Mr. Altschul's testimony in its Rule 1925(a) opinion. **See** Trial Ct. Op., 11/30/23, at 4. It is apparent that the trial court found Mr. Altschul's testimony dispositive of the question of whether the 2006 document is a certificate of occupancy. Therefore, we turn to Mr. Altschul's testimony for review.

We summarize the relevant portions of Mr. Altschul's testimony as follows. Mr. Altschul is the township manager of Westtown Township, a position he has held since November 2020. **See** Altschul Dep., 1/19/23, at 10. Some of his duties involve overseeing the building, zoning, and codes department, and he reviews from time to time building permits, occupancy permits and other things "relative to construction within the township." **Id**. at 12.

The 2006 document, as appended to the motion for summary judgment, appears as follows:

RECEIVED MAY 2 0 2005

WESTTOWN TOWNSHIP
1039 Wilmington Pike
P.O. Box 79
Westtown, PA 19395

Phone: 610.692.1930
Fax: 610.692.9651

Date Received __5-20-05__

---

OFFICIAL USE ONLY

sw 1/23/06

Zoning District __R1__   Parcel Number __67-4-23, 2__   Permit Number __2005 0103__   Permit Fee _____

Use Group Classification _____   Construction Type _____   Lot Number _____

Subdivision _____   Address _____

---

Applicant/Contractor Information   PERMIT TYPE: ☒ New   ☐ Addition   ☐ Alteration

Property Owner __Greenstone Development Corporation__ Phone Number __610-695-8464__

Address __P.O. Box 973__   City __Paoli__   State __PA__   Zip Code __19301__

Contractor
Company Name __T.A.G. Builders Inc.__   Phone Number __610-695-8464__

Owners Name __Thomas Galbally__   Phone Number __610-695-8464__

Address __P.O. Box 973__   City __Paoli__   State __PA__   Zip Code __19301__

Architect/Other __Peter Batchelor & Associates__ Phone Number __610-719-8230__

Address __1595 Paoli Pike__   City __West Chester__ State __PA__   Zip Code __19380__

## NOTICE

When alterations, repairs or additions requiring a permit occur, the entire building shall be provided with smoke detectors located as required for new dwellings indicated in the CABO building code Chapter 3, §316.

**Building Information**

The applicant ☒ Owner   ☐ Contractor   ☐ Architect   herby makes application to   ☐ Alter ☒ Erect the following:

Description __Single Family Dwelling__

On property located at __135 Hidden Pond Way__

Lot Number __1__   Lot Area __27,973 □__   Frontage __176' +or-__   Depth __179.60'__

Set Back from right-of-way __39-31__   Side Yard – Left __N/A__   Right __N/A__   Rear Yard __N/A__

Floor area __2854__ sq.ft.   Height __34'__   Width __60'__   Depth __60'__

Sewer Disposal ☒ Public   ☐ *On site – CCHD permit number __N/A__   Date __N/A__
*NOTE: Additional bedrooms may require separate review and permitting by CCHD.

Water supply ☒ Public   ☐ On site – CCHD well permit number __N/A__   Date __N/A__

No. of floors __3__   No. of rooms __18__   No. of Bedrooms __5__   No. of Baths __4.2__   Total Sq. Ft. __5,635__

☒ Attached garage   ☐ Detached garage

## PLEASE COMPLETE THE OPPOSITE SIDE

**14**

Building Information (Continued)

Structural

Footings ___20" wide (House) 16" wide Garage___ Depth ___8"___

Foundation ___Poured concrete___

| | Span | Size | Spacing | | Span | Size | Spacing |
|---|---|---|---|---|---|---|---|
| Girders | | | | Interior Studs | | | |
| 1st Floor Joist | PER | | | Roof Rafters | PER | | |
| 2nd Floor Joist | | PLAN | | Bearing Walls | | PLAN | |
| Ceiling joist | | | | Columns | | | |
| Exterior studs | | | | | | | |

Wall Coverings

Exterior Walls ___Stucco/stone veneer / Vinyl siding___ Interior Walls ___½" drywall___ Roof ___30 yr dimensional shingles___

Mechanical

| Equipment | Flue Size |
|---|---|
| Furnace | |
| Fireplace | Pre fab unit |

Type of furnace ☐ Oil ☒ Natural Gas ☐ LP Gas ☐ H.P. ☐ Other _____

Type of water heater ☐ Oil ☒ Natural Gas ☐ LP Gas ☐ Electric ☐ Other _____

Plumbing

Kitchen sinks __2__ Dishwashers __1__ Garbage disposals __2__ Clothes washers __1__ Laundry Tubs __1__

Lavatories __6__ Water Closets __6__ Bath tubs __3__ Showers __1__ Other _____

Electrical

Main service __400 AMP__ Ranges __1__ Heaters __2__ Fixtures __?__

Switches __Per code__ Outlets __per code__ Other __N/A__

VALUATION: Builders Cost $ __397,600__ Contract Price $ __?__

I hereby acknowledge that I have read and understand this application and state that the above is correct and I agree to comply with all the provisions of the Westtown Township Building codes and zoning ordinances.

SIGNATURE OF APPLICANT _____ DATE __5-20-05__

-------- DO NOT WRITE BELOW THIS LINE --------

PERMIT APPROVAL

Building Inspector/Zoning Officer _____ Date _____

Board of Supervisors _____ Date _____

CERTIFICATE OF OCCUPANCY – This is to certify that the building and/or property above was completed in accordance with all application regulations and is permitted to be use as a _____ in accordance with the provisions of the Westtown Township Building Code and Ordinances of 1991 as amended.

☐ Special stipulations OR variance OR special exceptions. SEE ATTACHED.

Zoning Officer _____ Building Inspector _____ Date __1/30/06__

REQUIRED INSPECTIONS

| Site Inspection | Plan Review | Footer | Foundation | Waterproofing | Backfill | Framing | Fire Caulking | Insulation |
|---|---|---|---|---|---|---|---|---|
| Sanitary Sewer | Int. Plumbing | Rough Electric | Final Electric | Final-Building | C. of O. | | | |

15

Riehl Bros. Mot. for Summ. J., 5/15/23, at Ex. E.[3]

Regarding this 2006 document, Mr. Altschul testified:

This would appear to be a building permit application from 15 or 16 years ago. . . . This form doesn't exist in its current form. But I'd note that on the last page there is an area where you could sign for a certificate of occupancy.

So it would seem to me that this is both a building permit application and a place where the building inspector would indicate whether a certificate of occupancy for that building permit was granted.

Altschul Dep., 1/19/23, at 13-14. Mr. Altschul noted that the signature line for the zoning officer was left blank, but that the line for the building inspector had a signature; however, Mr. Altschul could not confirm that the signature was that of the prior building inspector, but could only state that there was a signature on the line. *See id*. at 19. Mr. Altschul also could not explain why there was a blank signature line. *See id*. at 64-65. When asked whether this was "the form of the certificate of occupancy that Westtown Township was issuing back in the 2005/2006 timeframe," Mr. Altschul replied, "***I would have to imagine, yeah***." ***Id***. at 20 (emphasis added). Mr. Altschul could not explain why there were several blanks at the bottom of the form with respect to required inspections: "***Yeah, I don't know***. It's possible that the building inspector at the time just kept notes in a note pad. ***I have no special insight into why those are blank*** . . .." ***Id***. at 22 (emphases added). When

_____

[3] Riehl Bros. identified the document as both a building permit and a certificate of occupancy. ***See*** Riehl Bros. Mot. for Summ. J., 5/15/23, at p.3 nn.10, 14.

asked if the required inspections took place, Mr. Altschul stated, "I would presume so." *Id*.[4] It is clear from the testimony, when considered as a whole, that Altschul was not familiar with the 2006 forms.

When shown a copy of the re-sale certificate of occupancy (the 2011 form), *see infra* at 20, Mr. Altschul opined that this certificate was the "basic idea" of how the certificate of occupancy looked, though the form "no longer exactly looks like that," but he could not say whether it had been the format for certificates of occupancy in the township for a "number of years," because, while it is a "reasonable conclusion to make," he did not have "any firsthand knowledge of that." *Id*. at 58-59. Mr. Altschul could not say what form the certificate of occupancy took at the relevant time, but believed it would be unreasonable to conclude that the 2006 document was not a certificate of occupancy because the document contained the words "certificate of occupancy," and was signed and dated (despite the blank signature lines). *Id*. at 62. Notably, when Mr. Altschul was shown other certificates of occupancy from 2006 and 2009 for houses in the same development that were consistent in form with the re-sale certificate of occupancy (the 2011 form, *see infra* at 20), but which differed drastically from the 2006 document, Mr. Altschul explained:

---

[4] Mr. Altschul also testified that the re-sale certificate of occupancy follows an inspection for "basic life safety issues." Altschul Dep., 1/19/23, at 29-30. Re-sale certificates of occupancy occur when the owner of an existing house sells it. *See id*. at 29.

. . . I think I have been clear here, I didn't work for the township in 2006. I can't pretend to hold myself out as an expert on the forms that were used by the building code department of a place that I didn't even live in the same state.

*Id*. at 62-63, 67. We reproduce the 2011 re-sale certificate for the property

at issue below:



# WESTTOWN TOWNSHIP
## Certificate of Occupancy-Re-Sale
1039 Wilmington Pike
West Chester, Pa 19382
Phone: 610-692-1930  Fax: 610-692-9651

Tax Parcel # :  67-4-23.2          Permit Number :  20050103

Settlement Date:  8/26/2011        Date Paid:      6/28-2005

Subdivision :  ArborView           Lot Number:

**OCCUPANT INFORMATION**          Greenstone Development Corporation
                                  135 Hidden Pond Way
                                  West Chester, PA    19382

This certifies that the building and/or use of property listed above conforms to the provisions of the Westtown Township Zoning Ordinance of October, 1991, as amended and all reuirements of PA UCC.

Date Inspected:    08/24/2011      Zoning Classification:           R-1 Flex

Use Group:         Residential     Special Variance:        ▣

Construction Type:   V             Special Conditions:      ▣

Notes:    Residential Resale Certificate of Occupancy

This property is in an R-1 Flex Zoning District that restricts the use of this property to a single family only.

John C. Wilson
Building Inspector

Robert Layman
Zoning Officer/ Building Code Official

**49**

Riehl Bros. Mot. for Summ. J., 5/15/23, at Ex. G.

Mr. Altschul's testimony reveals that he could not state who signed the 2006 document; he could not explain why there was only one signature on it when two signature lines were clearly provided requiring two different signatures or why the inspections area was left blank; and, most crucially, he did not know what a certificate of occupancy from 2006 would have looked like.

Prior to Mr. Altschul's testimony, and during the initial summary judgment motions, the trial court denied summary judgment and found there was a genuine issue of material fact about whether the certificate of occupancy was issued in 2006, and this included review of the 2006 document, *see supra* at 13. Appellees' argument in the first summary judgment motion was virtually identical to the second summary judgment motion asserting the 2006 document was a certificate of occupancy that triggered the statute of repose and precluded the lawsuit. *See* Riehl Bros.' Mot. for Summ. J., 1/27/23, at ¶ 11 (asserting the existence of a 2006 certificate of occupancy based on the 2006 document);. T.A.G. and Greenstone's Mot. to Join., 2/1/23 (T.A.G. and Greenstone joining in Riehl's motion for summary judgment); Supplee's Mot. to Join, 3/13/23 (Supplee also moving to join Riehl's motion for summary judgment). Appellants opposed the summary judgment motion, arguing that no certificate of occupancy had issued prior to 2011. *See* Pls.' Opp'n, 3/20/23, at ¶¶ 8, 11. Following the motions and Appellants' response, the trial court denied the motions for summary judgment, concluding there was a genuine

issue of material fact as to when the certificate of occupancy was issued. *See* Order, 3/28/23, at 1-2 n.1.

Riehl Bros. later renewed its motion for summary judgment, and it was nearly identical to the initial summary judgment motion. The only difference was the addition of Mr. Altschul's deposition testimony. *See* Riehl Bros.' Mot. for Summ. J., 5/15/23, at ¶ 13. T.A.G. and Greenstone separately moved for summary judgment, citing Mr. Altschul's testimony. *See* T.A.G.'s and Greenstone's Mot. for Summ. J., 5/15/23, at ¶ 13 (asserting that Mr. Altschul's testimony "irrefutably establishes that the original [certificate] was issued on January 30, 2006").[5] Appellants opposed the motions and again asserted that the first certificate of occupancy was issued in 2011 (*i.e.*, the form entitled re-sale occupancy, *see supra* at 21); contested that the 2006 document was a certificate of occupancy; and assailed Mr. Altschul's testimony, pointing out that Mr. Altschul "could not even answer basic questions about the current process for issuing [c]ertificates of [o]ccupancy[,] much less the process in 2005." Pls.' Opp'n, 6/14/23, at ¶ 7.

Following its consideration of Mr. Altschul's at best equivocal testimony, the trial court granted the motions for summary judgment on the issue of the statute of repose, concluding that there was no genuine issue of material fact because the 2006 document was the original certificate of occupancy.

---

[5] Supplee moved to join Riehl Bros.' renewed motion for summary judgment. *See* Supplee's Mot. to Join, 6/9/23.

However, when looked at as a whole, Mr. Altschul's testimony was not the model of clarity or certainty. Mr. Altschul's general testimony revealed uncertainty about what the certificate of occupancy form looked like at the relevant time; and Mr. Altschul could not authenticate who signed the form or explain the various informational omissions in the document. He was shown certificates of occupancy from other houses in the same development sold in 2006 and 2009 that were vastly different in form from the 2006 document Appellees were putting forth as the certificate of occupancy, after which Mr. Altschul clearly back peddled stating " I can't pretend to hold myself out as an expert on the forms that were used by the building code department of a place that I didn't even live in the same state." Altschul Dep., 1/19/23, at 67.

Additionally, we note that Appellants retained an expert, The Falcon Group, who opined as follows:

> This home was constructed in 2006 but the permit was not closed out until 2011. . ..

> * * * *

> The Occupancy Permit [*i.e.*, the Certificate of Occupancy – Re-Sale,] for this home . . . indicates [it] was approved August 24, 2011, ***making the current age of the residence 11 years 7 months old at the time of the writing of this report.***

> * * * *

Pls.' Opp'n, 6/14/23, Ex. C (The Falcon Group's Engineering/Architectural Report for the Home), at 5 (emphasis added). This information was apparently not considered by the trial court.

Given the proper standard, which is to review the record in the light most favorable to the non-moving party, and where all doubts about whether there is a genuine issue of material fact to be resolved against the moving party, *see Petrina*, 46 A.3d at 797-98, we cannot say Appellees are entitled to judgment as a matter of law. The trial court relied on Mr. Altschul's testimony to conclude there is no genuine issue of material fact about the 2006 document, however, the court failed to address the various equivocations and shortcomings in Mr. Altschul's testimony, it failed to address the differences in the appearances of the other certificates of occupancy Appellants proffered from other homes in the development at around the same time, in comparison to the 2006 document; and the trial court did not mention Appellants' expert report. *Cf*. *Thompson v. Ginkel*, 95 A.3d 900, 905-06 (Pa. Super. 2014) (noting that conclusions by experts may be disputed at the summary judgment stage, but the credibility of, and weight afforded to, the testimony of expert and lay witnesses is for the trier of fact, and are not proper considerations at summary judgment); *Woodford v. Insurance Department*, 243 A.3d 60, 70 (Pa. 2020) (holding that credibility determinations can preclude summary judgment). This case is manifestly different from *Venema*, where there was "no dispute" about the date when a certificate of occupancy was issued, and that suit was filed over

twelve years later. 284 A.3d at 213.[6] Reviewing all the evidence before us in the light most favorable to the non-moving party, there is clearly an issue regarding when the statute of repose was triggered, and whether the 2006 document suffices as a certificate of occupancy, which is material to the defense here. As such, the trial court erred in granting summary judgment on this basis.

_____

[6] We reiterate that for a statute of repose to bar a plaintiff's claims, three elements must be met: (1) what is supplied by defendant is an improvement to real property; (2) more than twelve years have elapsed between the completion of the improvements to the real estate and the injury; and (3) the activity of the moving party must be within the class which is protected by the statute. **See Venema**, 284 A.3d at 212. Additionally, while in **Venema**, we held that the completion of the improvements to the real estate was established by a certificate of occupancy, nowhere did we indicate that this was the **only** way the completion of construction could be shown. We note that T.A.G. briefly argues its owner testified that construction was completed in January 2006, **see** T.A.G.'s Brief at 6, and Riehl Bros. asserts the same, relying on an admission by T.A.G. **See** Riehl Bros. Brief at 7, 18. However, we note the trial court previously denied summary judgment based on T.A.G.'s admission, and emphasize that the trial court's later grant of summary judgment, as shown above, ultimately hinges on the narrow factual question of when the certificate of occupancy was issued; this disposition should not be construed to opine about when the construction of the residence was completed. **Cf**. **DeArmitt v. New York Life Ins. Co.**, 73 A.3d 578, 595 (Pa. Super. 2013) (stating that "[t]he **Nanty–Glo** rule means the party moving for summary judgment may not rely solely upon its own testimonial affidavits or depositions, or those of its witnesses, to establish the non-existence of genuine issues of material fact[,]" and that "[w]hen there is uncertainty surrounding a conceded fact, it is the role of the . . . fact[-]finder to determine which facts have been adequately prove[n] and which must be rejected") (discussing, _inter alia_, **Borough of Nanty-Glo v. American Surety Co. of New York**, 163 A. 523 (Pa. 1932)) (some citations and quotations omitted).

In their second issue, Appellants maintain the trial court erred in granting summary judgment to Greenstone in particular because Greenstone was not within the class protected by the statute of repose because Greenstone did not design or construct the home. *See* Appellants' Br. at 47-48.

Section 5536(a) covers those "lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property . . .." 42 Pa.C.S.A. § 5536(a). Thus, it is the actions a party performs which determine whether the statute of repose applies to that party. *See*, *e.g.*, *McConnaughey v. Building Components, Inc.*, 637 A.2d 1331, 1333 (Pa. 1994) (providing that "The party moving for protection under the statute of repose must show[, *inter alia*, their] **activity** [is] within the class which is protected by the statute") (emphasis added); *accord Venema*, 284 A.3d at 212 (citing *McConnaughey*).

The trial court adopted Greenstone's position and concluded that Greenstone is covered by the statute of repose by relying on an allegation in Appellants' complaint that Appellants "believed and therefore averred" that Greenstone worked together with other defendants to, *inter alia*, construct and design the home; and Appellants' admission in their answer to the summary judgment motions that Greenstone was a developer for ArborView. *See* Appellees' Br. at 27 (citing Compl., 12/10/20, at ¶ 14 and Pls.' Opp., 6/14/23, at ¶ 2); Trial Ct. Op., 11/30/23, at 5-6. The trial court cited no other

facts in support of its conclusion that Greenstone was covered by the statute of repose as a matter of law. ***See generally*** Trial Ct. Op., 11/30/23, at 5-6.

Our review discloses that the trial court erred in concluding as a matter of law that Greenstone was within the class protected by the statute of repose, because there is a genuine dispute of material fact about what activities Greenstone performed which brought it within the ambit of the statute of repose. We note, initially, that notwithstanding Appellants' pleading and answer to the motion for summary judgment, Greenstone owner Thomas A. Galbally testified in his deposition that Greenstone did not play any role in the construction or design of the home. ***See*** Galbally Dep., 1/19/23, at 34-35. Additionally, in their memorandum opposing summary judgment, which accompanied their answer in opposition to summary judgment, Appellants argued that Greenstone was not covered by the statute of repose because Greenstone "played no role in constructing or designing the home." Pls.' Mem. of Law, 6/14/23, at 36.

Given that it was Greenstone's burden to prove the applicability of the statute of repose, and in light of the conflicting evidence in the record, the trial court erred in concluding the statute of repose applied to Greenstone, without specifying evidence in the record of activities Greenstone performed which brought it within the scope of the statute of repose, and by, instead, disregarding this evidence and relying on a mere averment in Appellants' pleading (*i.e.*, the complaint) and an admission in their answer in opposition

to summary judgment that Greenstone was a developer. Rather, this dispute of material fact must be resolved by a fact-finder and not addressed as a matter of law *via* summary judgment. ***See McConnaughey***, 637 A.2d at 1333; ***Petrina***, 46 A.3d at 798 (providing that a court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party). For these additional reasons, the trial court erred in granting Appellees' motions for summary judgment.

Accordingly, we reverse the order granting summary judgment.[7]

Order reversed. Application for relief denied as moot.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/8/2025

---

[7] Appellants filed an application for relief in which they seek a disposition of this appeal. **See** App. for Relief, 7/25/25. Because this memorandum decision disposes of the appeal, we deny the application for relief as moot.